'ALBERT O'NEIL v. CHARLES P. POTTS.
ROSE O'NEIL v. CHARLES P. POTTS.[1]

July 16, 1915.

Nos. 19,269—(184).

**Photograph in evidence.**
　　1. Strasser v. Stabeck, 112 Minn. 90, followed to the effect that a photograph will be admitted, when properly verified, to illustrate or express the testimony of a competent witness, but it is not original evidence.

**Evidence of custom.**
　　2. The admission of evidence, tending to show a practice among automobile drivers of signaling to cars behind them before stopping, *held* not prejudicial error. Failure to conform to the practice was merely evidence tending to show want of ordinary care.

Two actions in the district court for Ramsey county, one by Albert O'Neil to recover $3,500 for personal injury of his wife and deprivation of her society and services, and the other by Rose O'Neil to recover $5,000 for her own injuries. The case was tried before Johnson, J., and a jury which found a verdict in each case in favor of defendant. From the order denying their motions for a new trial, plaintiffs appealed. Affirmed.

[1] Reported in 153 N. W. 856.

---

Note.—The authorities passing upon the use of photographs as evidence are reviewed in the notes in 35 L.R.A. 802 and 51 L.R.A.(N.S.) 842.

As to the effect and conclusiveness of photographs as evidence, see note in 15 L.R.A.(N.S.) 1162.

*Durment, Moore & Oppenheimer,* for appellants.
*O'Brien, Young & Stone,* for respondent.

SCHALLER, J.

On October 12, 1913, defendant was driving his auto, containing his wife, another lady and one Gustafson, along Minnehaha Parkway. Plaintiff Rose O'Neil was driving a car in the same direction. She passed defendant, turned into the road in front of him and, without warning, stopped her car. Defendant's car struck the rear of the O'Neil car, damaging it somewhat and causing the injuries to plaintiff Rose O'Neil complained of.

The complaint alleged negligence; the answer denied this and set up contributory negligence. The cases were tried together and in each case a verdict was rendered for defendant. Plaintiff in each case moved for a new trial and appeals from the order denying the same.

The assignments of error present two principal questions: (a) That two photographs were improperly admitted in evidence; (b) that evidence tending to prove a certain custom of the road was erroneously received.

1. "A photograph, like a map or diagram, is merely a witness's pictured expression of the data observed by him and therein communicated to the tribunal more accurately than by words. Its use for this purpose is sanctioned beyond question." 1 Wigmore, Ev. § 792.

"The rule governing the admission in evidence of an official map, plat, model, or photograph is well settled. They are admitted, when properly verified, to illustrate or express the testimony of a competent witness, but are not original evidence. State v. Shevlin-Carpenter Co. 66 Minn. 217, 68 N. W. 973; Hall v. Connecticut Mutual Life Ins. Co. 76 Minn. 401, 79 N. W. 497; Stewart v. St. Paul City Ry. Co. 78 Minn. 110, 80 N. W. 855. 'The use of maps * * * as testimony to the objects represented rests fundamentally on the theory that they are the pictorial communications of a qualified witness, who uses this method of communication, instead of or in addition to some other method. It follows, then, that

the map * * * must first, to be admissible, be made a part of some qualified person's testimony. Some one must stand forth as its testimonial sponsor; in other words, it must be verified.' 1 Wigmore, Ev. § 793. Where, in such cases, there is evidence fairly tending to establish such verification, the sufficiency of the evidence is a question addressed to the discretion of the trial judge, and his decision will not be reversed, except for an abuse of the discretion." Strasser v. Stabeck, 112 Minn. 90, 92, 127 N. W. 384.

"Was it for the court to say that the photographs were not true representations, or that they were misleading? The photographer was called as a witness and testified that the photographs were correct representations, after making due allowance for the enlargement of objects close to the lens. We think that it was for the jury and not for the court to say whether the photographs lied, just as it was for the jury and not for the court to decide upon the credibility of any witness. We concur in the statement made by Professor Wigmore on the subject. 1 Wigmore, Evidence, § 792." Mitton v. Cargill Ele. Co. 124 Minn. 65, 144 N. W. 434.

The plaintiff testified, in relation to the photograph (Exhibit 1), that he was present when it was taken; that it is a correct photograph of the road at the place where the accident happened; that it was taken about 11 months after the accident; that the conditions were the same except that a certain house and the walk leading to it had been built since the accident; that the car shown in the photograph was his car; that it was placed as nearly as his recollection would then serve at the point where Mrs. O'Neil's car was at the time of the accident; that the photograph represented correctly the road conditions at that point except that the photograph showed the road light and that the road is really darker, an oiled road, and that the photograph was not taken at his request or under his instructions. It also appeared that the photograph was taken under the direction of defendant's counsel.

Objection was made to the admission of the photograph that it was too remote. The court did not rule upon the objection, but suggested that it would have to be shown that the conditions were

the same when the picture was taken as they were at the time of the collision.

Testimony was then offered, tending to show that conditions had not changed except as to the house and walk. The offer was then submitted and the court received the exhibit in evidence.

Thereupon plaintiff cross-examined the witness, who testified that he absolutely knew that the roadway was in the same condition as at the time of the accident; that the photograph did not show passing vehicles and that the house and sidewalk had been built since the accident.

Objection was again made that it was too remote and not the same condition. The court received the exhibit.

On redirect examination, another photograph, showing the same road and two automobiles, was produced and offered in evidence; it having been shown that plaintiff's car shown therein was in the same position as in Exhibit 1, and that the other car shown was coming from the west; that the roadway shown was in the same condition as to width as it was at the time of the accident, and that Exhibit 2 showed the location of the accident.

On cross-examination by plaintiff, defendant was asked: "What was the purpose of taking this last picture" (Exhibit 2) ? and after argument the witness answered: "To place the machines relatively about where we thought they were."

Defendant's counsel stated that Exhibit 2 was taken "not merely to show the road, but to show how two machines will occupy the road * * * to show the extent to which two machines, alone, will occupy the road."

Objection was renewed to the photograph as unwarranted, too remote, not fairly showing the situation at the time and without foundation. Further testimony was taken, tending to show that the traveled roadway was the same width for some distance and that both photographs showed the place where defendant's machine was at the time of the accident. The offer of Exhibit 2 in evidence was then submitted. The court admitted it, saying: "It will be received for what it is worth."

Nothing further appears in the record in relation to the photo-

graphs. The court gave no special instruction in his charge to the jury on the subject of the value of these photographs as evidence, nor was any instruction of the kind asked for. With the evidence in this condition and under these circumstances, we cannot say that the admission of the exhibits in evidence was prejudicial error.

2. The other assignments present the question whether or not the admission of evidence of a practice said to obtain among automobile drivers of signaling to cars behind them before stopping, was error. One witness testified that during several years past he had traversed the parkways and streets of the cities of St. Paul and Minneapolis continuously in automobiles, and that he knew there was a custom among automobile drivers, well understood and practiced by them, of giving a warning signal if they wanted to stop on the road or the side of the street on which they were driving. The question was asked: "What is that custom?" Upon this, objection was made that the evidence was immaterial, irrelevant, incompetent and no foundation laid. After some argument the court, before ruling on the question, allowed counsel to examine the witness as to the existence of the custom, stating that the foundation laid was, in the court's opinion, not sufficient. Then followed further preliminary questions. The court finally admitted the testimony, which was to the effect that such a custom was understood and practiced by automobile drivers, the testimony being that the driver held out his arm to the right side or the left side, whichever side he was driving from and that is done "quite a little distance before you want to stop, if you are going to do any stopping."

It further appears that plaintiff Mrs. O'Neil, who was driving the damaged car, testified that she knew it to be a custom of the road to hold out the hand as a warning to people coming from behind in case she desired to turn off onto a cross-road. She also testified, in answer to the question as to whether or not she held out her hand as a signal to anyone who might be coming behind her that "I don't always put my hand out on the drive when I stop that way."

This evidence of the custom does not appear to have been offered to show that drivers of automobiles were bound by the practice. Defendant insisted that it was proof of what the ordinary driver

does under like circumstances, that it was evidence to go to the jury on the issue of negligence, and that it bore on the question as to whether or not plaintiff Mrs. O'Neil, or the defendant or both had failed to exercise due care in driving their automobiles.

The foundation laid and the proof of the custom were not in the highest degree satisfactory, but we cannot say that there was not some evidence tending to show the custom or usual practice. The court admitted the testimony as bearing upon the question of ordinary care. The case was submitted to the jury under proper instructions. The court charged that "it is a question for [the jury] to determine * * * whether, in the exercise of care and prudence, [the plaintiff] should have given any warning or could have given any warning, or whether there was anything she could have done to prevent the collision that she did not do. It is a question of fact for this jury to determine from all the evidence in the case." There was no exception taken to this instruction nor is it challenged as error. The learned trial judge submitted the case on the theory that every person operating an automobile must use that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances; that in some situations greater care is required than in others, depending upon the dangers involved; that the care must be commensurate with the danger and that the failure to exercise such care is negligence. In submitting the case to the jury on the question of Mrs. O'Neil's contributory negligence, the court instructed the jury that the same rules and the same degree of care would be required on her part as would be required on the part of defendant, that it was her duty to use reasonable care under the circumstances, and that whether or not she used reasonable care in the management of her car was a question for the jury to determine.

At the close of the charge, the court asked counsel whether there were any suggestions to be made or exceptions to be taken. Suggestions were made by both sides and further instructions were given. No exceptions were at that time taken to any part of the charge.

The evidence in relation to the custom is far from conclusive, but we cannot say that it was improperly admitted. The question

as to whether a proper foundation was laid was largely in the discretion of the trial court. It was nowhere claimed that the custom was binding upon the plaintiffs. It was introduced as evidence tending to show what was usually done by drivers of automobiles under similar circumstances. The failure to conform to the practice was not in itself want of ordinary care. Texas & P. Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. ed. 905; Wabash Ry. Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. ed. 605.

It has been said that "what usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not." Mr. Justice Holmes, in Texas & P. Ry. Co. v. Behymer, supra; Wiita v. Interstate Iron Co. 103 Minn. 303, 115 N. W. 169, 16 L.R.A.(N.S.) 128; McMahon v. Illinois C. R. Co. 127 Minn. 1, 148 N. W. 446; Boos v. Minneapolis, St. P. & S. S. M. Ry. Co. 127 Minn. 381, 149 N. W. 660; Walker v. Holbrook, supra, p. 106, 153 N. W. 305.

Orders affirmed.