## F. C. GETZ v. STANDARD OIL COMPANY AND ANOTHER.[1]

July 30, 1926.

No. 25,509.

**Findings respecting explosion of mixture illegally sold were sustained.**

1. Defendant oil company by mistake mixed gasolene with kerosene furnished defendant Iverson. The deceased purchased some of this mixture. He started his fires with kerosene without kindling. His dwelling burned and all the inmates perished. Two explosions were heard. The stove was found in fragments. The can was near it with the seams open. There was evidence that fuel had been placed in the stove. *Held* that the evidence sustains the finding that some of the mixture had first been poured on the ashes and fuel placed thereon, and then an attempt made to light it which resulted in the explosions; also the finding that the mixture was of a more inflammable character than kerosene of legal grade and its sale unlawful; also the finding that the deceased was not guilty of contributory negligence.

**No review of question raised because no exception taken to charge and no assignment of error.**

2. There was no exception to the charge that if either defendant was liable both were liable, and the oil company cannot now claim that the act of Iverson in making the sale was an intervening cause which relieved it of liability.

**Reduced verdict not excessive.**

3. We find no reversible error in the rulings and cannot pronounce the verdict as reduced excessive.

Appeal and Error, 3 C. J. p. 922 n. 36; 4 C. J. p. 662 n. 82; p. 719 n. 37; p. 869 n. 96; p. 1172 n. 63; p. 1173 n. 64.
Death, 17 C. J. p. 1353 n. 37.
Explosives, 25 C. J. p. 209 n. 98; p. 210 n. 10.

Action in the district court for Clay county by the administrator of the estate of Lewis H. Getz, deceased, to recover for death of plaintiff's intestate by wrongful act. The case was tried before

[1]Reported in 210 N. W. 78.

Nye, J., and a jury which returned a verdict in favor of plaintiff. The Standard Oil Company appealed from an order denying its motion for judgment notwithstanding the verdict or a new trial. Affirmed.

*Conmy, Young & Burnett,* for appellant.

*Hammett & Morton* and *L. E. Jones,* for respondent.

TAYLOR, C.

Action for death by wrongful act and a verdict for plaintiff. Defendant Standard Oil Company appeals from an order denying its alternative motion for judgment non obstante or for a new trial, and will be intended by the term defendant unless defendant Iverson is specifically named.

Defendant Iverson had a store at Baker in Clay county and an underground tank for kerosene. John Locken, residing at Sabin in the same county, was the agent of defendant Standard Oil Company and on Saturday February 17, 1923, came to Iverson's store with a tank truck to deliver kerosene. He states that the truck had three compartments holding respectively 150, 100 and 50 gallons, and that he had filled the first and second compartments with kerosene and had 20 gallons of gasolene in the third. The faucets for all three compartments were at the rear of the truck and the faucet for the compartment containing gasolene was not marked as required by the statute. He states that he attached a hose to the faucet of the first compartment and transferred the contents of that compartment into Iverson's tank, and then attached the hose to another faucet intending to transfer the kerosene from the second compartment into the tank. On his return to Sabin he discovered that he had put the 20 gallons of gasolene into Iverson's tank instead of the kerosene contained in the second compartment, and notified Iverson of the mistake by telegraph. The next morning, Sunday, February 18th, he went to Baker to pump out the mixture. The pump was inside the store and he pumped it into a five-gallon can from which he emptied it into the tank on the truck. He states that when he had pumped out 115 gallons he announced that he had

pumped out that quantity and was then told by those in charge of the store and also by the others present, one of whom was Lewis Getz, the deceased, that there was no need to pump out the remaining 55 gallons as the gasolene left would do no harm, and that without pumping out any more he put 225 gallons of kerosene into the tank.

Lewis Getz owned a one-story frame building originally built for a store with living rooms at the rear. The room intended for a store was used as a school room at this time, and Getz with his wife and two small children occupied the living rooms. Getz acted as janitor of the school and started the fires therein. He also operated a potato warehouse and started the fires in the room used as an office. The evidence is undisputed that he used no kindling in starting his fires, but poured kerosene upon the ashes, put on the coal or briquets and then lit the kerosene with a match. Using no kindling necessarily required a considerable quantity of kerosene to start the fire.

On February 20th or 21st Getz bought three gallons of the mixture from Iverson's clerk and took it home in a five-gallon can. About half past 7 o'clock on the morning of February 22, 1923, his living rooms were discovered to be on fire. Neighbors broke open some of the windows and the door and attempted to enter, but were driven back by stifling black gassy smoke and the flames. The entire family perished. In the living room there was a small soft-coal heater. A bedroom adjoined the living room with a doorway or opening between about seven feet in width. The bodies of the mother and the two children were found upon the bed in this bedroom. The body of Mr. Getz was found on the floor between the bed and the stove. The stove was found broken into fragments. The kerosene can was found upright about three feet from the stove with the seams burst open. Two witnesses testify that there were briquets in and about the broken firepot of the stove and burning when seen after the building had collapsed. They estimated the quantity at a small bucketful. Neighbors heard two explosions shortly before the fire was discovered.

The court instructed the jury that if Getz put kerosene or some of this mixture on live coals or hot ashes in the stove, doing so would be an act of negligence on his part which would prevent a recovery. But further instructed them that using kerosene to start a fire would not be negligence in law if there were no live coals or hot ashes or anything which might generate a gas and due care was exercised in using it. The correctness of this statement of the law is not questioned. But defendant insists that it is purely a matter of conjecture whether Getz poured the mixture upon cold ashes or upon hot ashes or coals. We think the jury could legitimately infer from the facts disclosed by the evidence that Getz poured some of the mixture upon the ashes in the stove, put in the briquets, attempted to light the fire with a match, and that this caused an explosion in the stove which was followed a moment later by an explosion in the can. The testimony that there were briquets in the stove, that the oil can was standing upright about three feet away, and that two explosions were heard is more in accord with that theory than with the theory that Getz poured the mixture upon hot coals or embers.

These facts in connection with the presumption of due care and the known custom of Getz to pour kerosene upon the cold ashes were sufficient to make the question a question for the jury. Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 Sup. Ct. 270, 53 L. ed. 453. The case cited was much like the case at bar. Something less than five per cent of gasolene had been mixed with kerosene by mistake. It was the custom to start fires with kerosene. The home of one who purchased a gallon of this mixture was burned and the inmates perished. The court said:

"The proof as to the unburned and charred or stained condition of the kindling wood in the heating stove, when connected with the removal of the can, tended to show that some of the fluid from the can had been applied to the kindling before it was ignited and preparatory to starting a fire. But the situation of the can after the fire and the place where the top of the can was found, clearly tended to rebut the implication that the fire had been lighted and fluid

from the can then poured upon it. \* \* \* Moreover, in view of the proof as to the condition of the kindling wood, of the situation of the can, of the condition of the stove after the fire, of the position of the bodies of the wife and the two children, and of the dense and large volume of gases which filled the premises at the outbreak of the fire, we think there was adequate proof from which the jury could have inferred that the accident was the result of an explosion caused by applying a light to the kindling wood in the stove after it had been saturated with fluid taken from the can."

Defendant contended at the trial, and contends here, that the mixture contained less than three per cent of gasolene and that there was no more danger in using it to start a fire than in using kerosene for that purpose. In support of this contention, it presented the testimony of a chemist, conceded to be an expert in matters relating to petroleum and its products, who testified that gasolene poured into kerosene would diffuse uniformly throughout the entire mass, and that adding three per cent of gasolene to kerosene would make no appreciable difference in its explosive qualities. He did not state however the length of time within which the gasolene would diffuse through the kerosene.

If Locken's statement of the quantities was correct and the gasolene had diffused uniformly through the kerosene, the amount of gasolene in the final mixture would have been less than three per cent as claimed by defendant; and there is no direct testimony controverting the statement of defendant's expert that such a mixture is no more liable to explode than kerosene. But there is evidence from which the jury could well find that this mixture was in fact much more inflammable than kerosene of the grade which the law permitted to be sold. The law now prohibits the sale of kerosene which flashes at a temperature below 120 degrees Fahrenheit. The law as it then stood prohibited the sale of kerosene which flashed below 100 degrees. The court quoted the statute and correctly instructed the jury that if the mixture was below the standard fixed therein, selling it was negligence on the part of defendants. Samples taken from Iverson's tank after the fire and tested by the

deputy state oil inspector showed a variation in the flash point of more than 40 degrees according to his testimony—from below 40 degrees Fahrenheit to slightly above 80 degrees. All samples tested were considerably below the legal requirement. Whether Locken was mistaken in his statement as to the quantities, or the gasolene did not diffuse through the kerosene, or the kerosene itself was below the legal flashing point, or whether it had been adulterated in some other manner not disclosed, the evidence is sufficient to sustain the finding that in fact the mixture was not of the character claimed by defendant, but of a character so inflammable that its sale was unlawful.

Defendants insist that Getz was guilty of contributory negligence as a matter of law. They base this claim on the fact that he knew that gasolene had been mixed with the kerosene. So far as appears his only information was that given out by Locken when Locken pumped out and refilled Iverson's tank. This information was to the effect that 20 gallons of gasolene had been mixed with 150 gallons of kerosene, that 115 gallons of this mixture had been removed, and that the remaining 55 gallons had been mixed with 225 gallons of kerosene. Both defendant and its expert assert that the mixture which this would produce was no more dangerous than kerosene. Defendant does not question the instruction given the jury that using kerosene to start a fire was not negligence in itself. And we cannot say as a matter of law that Getz was bound to know, from the information that he possessed, that the danger in using the mixture sold him was materially greater than the danger in using kerosene. The question of contributory negligence was for the jury and was properly submitted to them.

Defendant urges that the act of defendant Iverson in making the sale was an intervening cause which relieved it from liability. The court instructed the jury that if either defendant was liable both were liable. No objection was made or exception taken to this instruction and therefore it became the law of the case. Dun. Dig. § 9792. Moreover it is not assigned as error.

We have examined the assignments of error directed to the rulings admitting and excluding evidence and find no reversible error

therein. The testimony of the deputy oil inspector who tested the samples taken from Iverson's tank was properly received, although he did not have the report he had made to the department and could give the point at which the different samples flashed only approximately. The samples were sufficiently identified.

The fact that the deceased was indebted to his father in a considerable sum was a proper matter for the jury to take into consideration in connection with all the other facts and circumstances bearing upon the probable pecuniary loss sustained by his parents. Stangeland v. M. St. P. & S. Ste. M. Ry. Co. 105 Minn. 224, 117 N. W. 386.

We cannot say that the verdict as reduced by the trial court is so excessive that this court would be justified in disturbing it.

While some other questions not argued at the hearing are raised in the brief we find none requiring special mention.

Order affirmed.