STEPHEN KNIHAL, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

36 N. W. 2d 109

Filed February 25, 1949. No. 32471.

*Eugene D. O'Sullivan, John T. Marcell, Arthur J. Whalen, Ernest S. Priesman, Eugene D. O'Sullivan, Jr.,* and *Warren C. Schrempp,* for plaintiff in error.

*James H. Anderson,* Attorney General, *Clarence S. Beck,* and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

Plaintiff in error, hereinafter referred to as defendant, was charged by information with murder in the second degree in the killing of one Martin Urn. He entered a plea of not guilty. Upon trial he was found guilty of manslaughter. Motion for new trial was made and overruled. Defendant was sentenced to imprisonment for a period of three years. Defendant brings the cause here by petition in error. We reverse the judgment of the district court, and remand the cause.

We recite the evidence only insofar as is necessary to an understanding of the assignments of error.

The state's evidence is to the effect that the defendant operated a tavern in South Omaha where beer and intoxicating liquors were served by the drink. The tavern room was 23 feet wide and 40 feet in length. It faced north. Along the west wall was a back bar. In front of that was a serving space, and then, making a

solid barrier extending about 30 feet from the north wall, a cigar case, a long front bar, and a cooler. The front bar was 3½ to 4 feet in height.

During the evening of January 17, 1947, the defendant was in his place of business and tending bar. The deceased, Martin Urn, was at the bar. One Shymkawicz came into the tavern. He had been drinking, and a police officer testified that he was drunk. An argument arose between the defendant and Shymkawicz over the change of another customer who came in with Shymkawicz. Before it ended the defendant took a double-barreled shotgun from the back bar and Urn was shot. The state's witnesses do not agree as to what happened leading up to the firing of the shot. Shymkawicz testified that he entered the tavern, ordered wine, went to the lavatory, returned to the bar, and took a sip of his drink. Then the discussion over the change began. One witness denied that Shymkawicz was served. Shymkawicz said the defendant took the shotgun from a niche in the back bar, put "a shell" in it, and put it back on the back bar. Shymkawicz testified that he thought defendant was bluffing then. There were two shells, one exploded and one unexploded, in the gun after the shooting. The discussion continued. The defendant again picked up the gun, ordered Shymkawicz out and said, " 'You son-of-a-gun I will blow your head off.' " Shymkawicz ran out. The shot which killed Urn was fired.

Shymkawicz testified that he was not profane, was not abusive, and was on good terms with the defendant; that he had not been in the tavern earlier that evening; and that the entire matter happened in about 3 minutes. There was no corroboration as to the loading of the gun. One state's witness testified that Shymkawicz came into the tavern, was ordered out, began to use vile and abusive language to the defendant, and accused defendant of vile offenses; that defendant reached for the gun and Shymkawicz left; that Shymkawicz returned several minutes

later and again used vile language; and that defendant became quite excited, and the shot was fired.

A police officer testified that after the shooting defendant said, " 'I shot the wrong man.' "

The main charge of the gun struck Mr. Urn in the head; he fell backward and was dead when the police arrived. Two pellets struck Shymkawicz and another bystander was slightly wounded in the ear.

The defendant's testimony is that Shymkawicz on previous occasions had been refused service of liquor and asked to stay out of the tavern; that on the evening in question he became abusive and profane when the defendant refused to serve him; that he continued it in discussing the change due another patron; that defendant called the police; that Shymkawicz left saying, " '* * * I am coming back; I am going to get you' "; that Shymkawicz came back, shaking his fist, calling names, and challenging defendant to put him out; that defendant took the gun to scare Shymkawicz and it discharged; that defendant did not put a shell or shells in the gun; that defendant did not know it was loaded; and that he did not intentionally shoot anyone. Defendant denied that he told the police officer he had shot the wrong man.

The defendant assigns as error the admission in evidence of three photographs. The testimony of the photographer was that the pictures were taken at the tavern about an hour after the shooting; that they were true reflections of the objects intended to be photographed; and that one of the pictures included the defendant. There was no further foundation evidence and no evidence related to the pictures descriptive of what they showed, other than the pictures themselves.

Exhibit 5 shows what appear to be a man in the foreground with his back to the camera, a back bar with bottles, a mirror, pictures, etc., a front bar, cigar case, cash register, and what appear to be the legs of a person on the floor. Between the bars and facing the camera

is a man wearing a white jacket and holding what appears to be a shotgun in a port position.

Exhibit 6 shows what appears to be a man with his arms outstretched lying on his back on the floor. There are black blotches about the mouth and below the right ear and a large black blotch surrounding the head.

Defendant objected to the admission of exhibits 5 and 6, challenging competency, relevancy, and materiality, and for specific other reasons.

Exhibit 7 was received in evidence when first offered without objection and is here subject to the rule that "Where testimony is offered and admitted in evidence without objection being made thereto, error cannot be predicated thereon in the supreme court on appeal." Fisk Tire Co. v. Hastings Warehouse & Storage Co., 131 Neb. 401, 268 N. W. 86.

As a general rule photographs are admissible in evidence only when they are verified or authenticated by some other evidence. 20 Am. Jur., Evidence, § 730, p. 609. Photographs are generally inadmissible as original or substantive evidence. They must be sponsored by a witness or witnesses whose testimony they serve to explain and illustrate. 32 C. J. S., Evidence, § 709, p. 613.

Wigmore states as follows: "We are to remember, then, that a document purporting to be a map, picture, or diagram, is, for evidential purposes simply nothing, except so far as it has a human being's credit to support it. It is mere waste paper,—testimonial nonentity. It speaks to us no more than a stick or a stone. It can of itself tell us no more as to the existence of the thing portrayed upon it than can a tree or an ox. We must somehow put a testimonial human being behind it (as it were) before it can be treated as having any testimonial standing in court. It is somebody's testimony,—or it is nothing. It may, sometimes, to be sure, not be offered as a source of evidence, but only as a document whose existence and tenor are material in the substantive law

applicable to the case,—as where, on a prosecution for stealing a map or in ejectment for land conveyed by deed containing a map, the map is to be used irrespective of the correctness of the drawing; here we do not believe anything because the map represents it. But whenever such a document is offered as proving a thing to be as therein represented, then it is offered testimonially, and it must be associated with a testifier." 3 Wigmore on Evidence (3d ed.), § 790, p. 174. "The use of maps, models, diagrams, and photographs as testimony to the objects represented rests fundamentally (as already noted in § 790) on the theory that they are the pictorial communications of a qualified witness who uses this method of communication instead of or in addition to some other method. It follows, then, that the map or photograph must first, to be admissible, be made a part of some qualified person's testimony. Some one must stand forth as its testimonial sponsor; in other words (as commonly said), it must be verified. There is nothing anomalous or exceptional in this requirement of verification; it is simply the exaction of those testimonial qualities which are required equally for all witnesses; the application merely takes a different form. A witness must have had observation of the data in question (ante, § 650), must recollect his observations (ante, § 725), and must correctly express his observation and recollection (ante, § 766). Here, then, is a form of expression ready prepared pictorially; he must supply the missing elements; in brief, it must appear that there is a witness who has competent knowledge, and that the picture is affirmed by him to represent it." 3 Wigmore on Evidence (3d ed.), § 793, p. 186. "A map or photograph cannot be received anonymously; it must be 'verified' by some witness." 3 Wigmore on Evidence (3d ed.), § 794, p. 186.

These rules have been followed in O'Neil v. Potts, 130 Minn. 353, 153 N. W. 856; Strasser v. Stabeck, 112 Minn. 90, 127 N. W. 384; Haven v. Snyder, 93 Ind. App.

54, 176 N. E. 149; Baustian v. Young, 152 Mo. 317, 53 S. W. 921, 75 Am. S. R. 462; Bretall v. Missouri Pacific Ry. Co. (Mo. App.), 239 S. W. 597; Hurlburt v. Bussemey, 101 Conn. 406, 126 A. 273; Coach Co. v. Lee, 218 N. C. 320, 11 S. E. 2d 341; Adamczuk v. Holloway, 338 Pa. 263, 13 A. 2d 2.

Under the limited foundation given it is patent that these pictures became substantive evidence. They spoke for themselves. 3 Wigmore on Evidence (3d ed.), § 790, p. 174; Reed v. Davidson Dairy Co., 97 Colo. 462, 50 P. 2d 532. As to who and what they showed, they did not have behind them the testimony of any witness supported by the sanctity of an oath, nor were they subject to the tests of cross-examination. The admission of exhibits 5 and 6 was error. Considering the nature of the scenes and objects portrayed, the error was prejudicial. Under these circumstances questions of admissibility which might arise after a proper foundation is laid should not now be determined.

Defendant requested an instruction on the maxim, "Falsus in uno, falsus in omnibus." The trial court refused to give the instruction. Defendant assigns this as prejudicial error.

Of the maxim, Wigmore said: "The maxim, 'He who speaks falsely on one point will speak falsely upon all', is in strictness concerned, not with the admissibility, but with the weight of evidence. The jury are told by it what force to give to a falsity after the evidence has shown its existence. * * * It may be said, once for all, that the maxim is in itself worthless;—first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also in practice pernicious, first, because there is frequently a misunderstanding of its proper

force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves." 3 Wigmore on Evidence (3d ed.), § 1008, p. 674. In section 1009, Wigmore states that the earliest appearance of the maxim in our law seems to be in Hampden's Trial, 9 How. St. Tr. 1053, 1101, where it was quoted in examination of a witness.

The source of the maxim is not clear. Broom's Legal Maxims does not discuss it. The Supreme Court of Ohio in Mead v. McGraw, 19 Ohio St. 55, said that it is derived from the civil law and points out that under the civil law, justice was administered by fixed tribunals charged with the determination of both law and fact, to which class under our system belong courts of equity and admiralty. The Supreme Court of Missouri in State v. Anderson, 19 Mo. 241, held that the rule was adopted from chancery and has little to do with jury trials. The Supreme Court of North Carolina in State v. Williams, 47 N. C. 257, refers to it as a maxim which emanated from the civil law and which was assumed to be a rule of evidence in the common law courts, without referring to the "authorities or the legal analogy, or to the principle and 'reason of the thing' growing out of the difference between the trial of facts by a jury, 'a casual tribunal' selected for that particular trial, and the trial of facts by a fixed tribunal" such as the "Ecclesiastical Courts, and the Courts of Admiralty, and the Courts of Equity, which are fixed tribunals"; and that in the law of England there has not been even a suggestion that the rule was one of evidence to be enforced in the common law courts. Jones on Evidence (Pocket Edition), section 903, page 1163, suggests a civil law, equity, and admiralty source and states that the maxim is one growing out of the old rule of law that one indicted and convicted of willful perjury was not a competent witness in any case.

In The Santissima Trinidad and the St. Ander, 7 Wheat. 283, 20 U. S. 283, 5 L. Ed. 454, the Supreme Court of the

United States, held that where a party speaks in respect to a fact to which he cannot be presumed liable to mistake, if the fact turn out otherwise, it is extremely difficult to exempt him from the charge of deliberate falsehood and courts are bound to apply the maxim. That was an admiralty case.

In Dell v. Oppenheimer, 9 Neb. 454, 4 N. W. 51, we followed and applied the rule of The Santissima Trinidad case. That was a case in equity.

In Buffalo County v. Van Sickle, 16 Neb. 363, 20 N. W. 261, we applied the rule in reviewing a trial to the court and limited it to false statements knowingly and willfully made.

In Kay v. Noll, 20 Neb. 380, 30 N. W. 269, we had the rule in a case involving the giving of an instruction in a jury trial. At least from that case forward the maxim as stated in various ways has been before us in many cases. The contentions of error in giving and in refusing to give an instruction based upon the maxim, which we have considered, are sufficient to justify the views of the Supreme Court of Mississippi that the doctrine is "always dangerous" in trials. Bell v. State, 90 Miss. 104, 43 So. 84.

We have heretofore announced these rules as to the giving of an instruction based on the maxim.

"Where the condition of the testimony is such as to justify an instruction based upon the legal maxim, *falsus in uno, falsus in omnibus,* and a proper instruction is requested, it is error for the court to refuse to give it." Joseph v. State, 128 Neb. 824, 260 N. W. 803.

" * * * such an instruction is, however, not required in all cases but only where from the evidence the jury may be justified in believing that a witness has willfully testified falsely to any material fact in the case, and further where the same witness has testified as to some other material issue in the case than that upon which he is directly impeached." Lee v. State, 147 Neb. 333, 23 N. W. 2d 316.

It is clear from the above rules that the trial court is required first to weigh the testimony and reach certain conclusions as a preliminary to the giving of the instruction. But we have held that "It is for the jury to determine whether a false statement by a witness was willful and intentional, or made through mistake and honestly." McCormick Harvesting Machine Co. v. Seeman, 49 Neb. 312, 68 N. W. 482. We have also held that "An instruction, by which the jury was sought to be directed that the evidence of certain witnesses was entitled to greater weight than that of others concerning a disputed fact, invades the province of the jury, (and) is erroneous, * * *." Crabtree v. Missouri Pacific Ry. Co., 86 Neb. 33, 124 N. W. 932, 136 Am. S. R. 663. We have also held that "It is reversible error for the court, in its charge to the jury, to give undue prominence to a portion of the testimony by special reference thereto—to state to the jury what weight shall be given it, and comment on its strength or probative force." Kleutsch v. Security Mutual Life Ins. Co., 72 Neb. 75, 100 N. W. 139.

There are many objections noted in the books to the implications which follow from the giving of an instruction based on the maxim. One of the serious objections is that the jury readily may get the implication that the trial judge considers that some one or more of the witnesses may have willfully testified falsely. It would not be difficult in most cases for the jury to sift the witnesses and find out which witness or witnesses the judge had in mind. The jury then is distracted from the issues of fact in the case to the issue of what witnesses are in the mind of the judge. More seriously, the instruction under those circumstances constitutes the expression of the opinion of the judge as to the credibility of the witnesses and the weight to be given to their testimony. In determining weight and credibility the jury has had thrown into the scales the opinion of the judge, which is not evidence. An instruction

based on the maxim singles out one reason among the many that a jury may weigh as to why a witness' testimony may not be credited.

The Supreme Court of Missouri has said: "It is hard to frame an instruction founded on the maxim which safeguards against every possible misleading implication without cutting down the doctrine"; and that this accounted for the confusion noted in the instructions reviewed. State v. Willard, 346 Mo. 773, 142 S. W. 2d 1046. Lord Esher, M. R., said about maxims in Yarmouth v. France, 19 Q. B. D. 647, 17 E. R. C. 217: "They are almost invariably misleading: they are for the most part so large and general in their language that they always include something which really is not intended to be included in them."

Without further reviewing the authorities we hold that it is not prejudicial error for the trial court to fail or refuse to give an instruction to a jury based on the maxim. Our holdings in Joseph v. State, *supra;* Lee v. State, *supra;* and prior decisions to the extent in conflict herewith are overruled. Accordingly, defendant's assignment of error is not sustained.

The court gave the jury an instruction on the credibility of witnesses and the weight to be given their evidence. The instruction contained this sentence: "Yet you have no right to reject the testimony of any of the witnesses without good reason, and should not do so, unless you find it irreconcilable with other testimony which you find to be true." The giving of this instruction, among others, was assigned as error in the motion for a new trial and in the petition in error. It is not particularly assigned as error by defendant in his brief here. We consider the instruction to be a plain error which we may notice under Rule 8 a 2 (4) of this court.

In Wilson v. State, *ante* p. 436, 34 N. W. 2d 880, we held that "An instruction in a criminal case the effect of which is to infringe upon the right of a jury

as the judge of the credibility of witnesses and the weight to be given their testimony is an invasion and an abridgment of a substantial right of the defendant." In that case we had this identical instruction before us. There there was no evidence in contradiction of evidence offered by the state in proof of the commission of the alleged offense. We there held that the testimony of no witness is surrounded with such sanctity as to require it to be accepted by the jury as true in the absence of controversion by other witnesses or conflict with other testimony, and held that the giving of the instruction was prejudicial error. Here the witness Shymkawicz testified that defendant said before the gun was fired, "I will blow your head off." So far as we can determine from the record that testimony was neither directly corroborated by other witnesses nor denied by the defendant. The effect of the instruction was to tell the jury that it should not reject the evidence as untrue. Applied to that evidence the instruction was prejudicial under the Wilson case.

The witness Shymkawicz testified that the defendant put a shell in the gun just prior to its being fired. The defendant denied that he did so. The police officer testified that defendant said after the shooting, "I shot the wrong man." Defendant denied the statement. There are other contradictions in the record. When applied to the testimony of the witness Shymkawicz and the police officer, the effect of the instruction is to tell the jury that it should not reject their testimony, unless it found the testimony irreconcilable with the testimony of the defendant, and even then should not do so unless it first found that the testimony of the defendant was true. The instruction put a burden of proof on the defendant. The defendant in a criminal case does not carry that burden. Bourne v. State, 116 Neb. 141, 216 N. W. 173. See, also, Frank v. State, *ante* p. 745, 35 N. W. 2d 816. We conclude that the giving of the instruction was prejudicial error.

Defendant's third assignment of error is that the trial court committed error in failing to instruct the jury properly and fully upon the defendant's theory of the case. This assignment is based upon the present record and the details of the testimony. A reversal granting a new trial being required which will involve a new record, we do not deem it necessary to determine these assignments.

For the reasons given herein, the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.