EMILY LaCOMBE, SPECIAL ADMINISTRATRIX OF ESTATE
OF GEORGE SPRINGSTEEN, v. MINNEAPOLIS STREET
RAILWAY COMPANY AND ANOTHER.[1]

February 21, 1952.

No. 35,587.

---

[1]Reported in 51 N. W. (2d) 839.

*John F. Dulebohn, Owen A. Johnson,* and *Robert D. Merrick,* for appellants.

*Ellis L. Bursell* and *Leslie C. Scholle,* for respondent.

MATSON, JUSTICE.

Defendants in a wrongful-death action appeal from an entire order granting a new trial *only* on the issue of damages but otherwise denying their motion for judgment notwithstanding the verdict or for a new trial.

In the city of Minneapolis on February 17, 1949, about 2:30 p. m., decedent, George Springsteen, as a pedestrian pushing a cart before him, was crossing Washington avenue north from its west to its east side over the right-angle intersection of said avenue with Eighteenth avenue. While so crossing the intersection, he was struck by a streetcar of defendant Minneapolis Street Railway Company (hereinafter called the street railway company) which was traveling on Washington avenue in a southerly direction under the control of defendant Orlo Fry, the motorman. Decedent died from his injuries the same day. This action was brought on behalf of his widow, and a daughter as next of kin, for damages under the wrongful-death statute. The jury awarded a verdict of $10,000 against both defendants.

At the above intersection, Washington avenue is 67 feet wide and Eighteenth avenue is a little over 33 feet in width. Running along Washington avenue and across the intersection are two sets of tracks, one for northbound streetcars and the other for those going south. Each track is 4 feet 8 inches wide from rail to rail. The inside rails of the two tracks are 5½ feet apart. The easterly rail of the northbound track is 10 feet 2 inches from the easterly rail of the southbound tracks. The street surface between the tracks and the rails is paved with cobblestones. Outside the track area on both sides the street is also paved with cobblestones, but these are covered with a heavy coating of black top or asphalt. Between the two sets of tracks, at the time of the accident, in the path taken by decedent with his cart, the cobblestones had been so broken and displaced as to leave a rough, "humped up" and uneven, saucer-shaped depression or hole of a depth of as much as 10 inches below the rail, which extended practically from one inside rail to the other. East of this hole, just outside the easternmost rail and in decedent's chosen path, was another hole. Between the rails of the northbound track a little to the north of the first hole was a third hole.

The high-wheeled cart pushed by decedent with its 100-pound load had a gross weight of 260 pounds. The wheel axle was located in the middle of the cart box, which was 7 feet 3 inches long. Attached to the box were pushing handles which extended to the rear 2 feet 1½ inches to give the cart an over-all length of 9 feet 4½ inches. In over-all width, the cart was 5 feet 4 inches. In determining the approximate position of decedent with respect to the oncoming streetcar, it is not to be overlooked that decedent, while pushing the cart, occupied with his arms and body additional longitudinal space to the rear of the vehicle. The streetcar had an overhang beyond each rail of about 1½ feet.

The motorman testified that he first saw decedent pushing his cart when the latter—at a distance of 140 feet from the streetcar—was practically up to the rails or nearly halfway into the intersection. Two disinterested witnesses in an automobile approaching

from the south saw the entire accident. When they were about 100 or 125 feet south of the intersection they saw decedent in the middle of Eighteenth avenue just entering the intersection. At the time, the approaching streetcar was about 150 feet to the north of the intersection. They stopped their automobile about 10 feet from the intersection to permit decedent to pass with his cart. The latter was then 25 or 30 feet away and was crossing the southbound tracks. Decedent continued to push his cart steadily eastward until the cart wheels got stuck or stopped near the east rail of the northbound track. He took hold of the push handles and pulled the cart toward him and at the same time took a couple of steps backward. Before decedent's backward movement had been completed, the front end of the streetcar was about to pass him, and he came into violent contact with the side of the streetcar about 4 feet back from the front end or just past its rounding front part.

As usual, we have a conflict as to speed. The motorman said that he was going about 14 miles per hour when decedent got stuck with his cart. A streetcar passenger estimated the speed at 25 or 30 miles per hour as the streetcar approached the intersection as well as at the moment of impact. The other witnesses who saw the entire accident estimated the speed at 20 miles per hour at the moment of collision. One of these two witnesses said the streetcar was traveling 25 miles per hour as it approached the intersection. After the accident, the streetcar came to a full stop with its rear end about 40 feet south of the intersection.

A reasonable interpretation of the motorman's testimony is that he first blew the whistle *after he entered* the intersection when he saw decedent stepping backward. The streetcar passenger said that he heard no signal. Another witness said that he heard a signal when the streetcar was 150 or 200 feet north of the intersection.

The jury awarded plaintiff a verdict of $10,000. Defendants' motion for judgment notwithstanding the verdict or a new trial was denied in its entirety, with the exception that a new trial was granted upon the issue of damages for the reason that the jury had

exhibited passion and prejudice in awarding plaintiff the maximum amount under the wrongful-death statute.

We are concerned with issues as to (1) negligence; (2) contributory negligence; (3) the refusal of the trial court to charge the jury that the condition of the paving between the streetcar tracks was a proximate cause of the accident; (4) whether the charge was adequate with respect to differences in levels of the portion of the pavement maintained by the city and the portion maintained by the street railway company; (5) the improper remarks of counsel; (6) the admissibility in evidence of certain photographs; and (7) as to whether the trial court erred in not granting a new trial on all issues because of passion and prejudice exhibited in the award of damages.

■ A motion for judgment notwithstanding the verdict, whether made with respect to negligence or contributory negligence, accepts the view of the evidence most favorable to the verdict and admits every inference reasonably to be drawn from such evidence, as well as the credibility of the testimony for the adverse party; and if the application of this rule, *in the light of the evidence as a whole,* discloses a reasonable basis for the verdict, the motion must be denied.[2] In keeping with this rule, we have stated the evidence in the light most favorable to the verdict. We turn now to a consideration of the inferences reasonably to be drawn therefrom. With specific reference to the issue of negligence, the jury could reasonably find that the street railway company was negligent in permitting the development and existence of a large saucer-shaped hole in the cobblestone pavement between the two sets of tracks. There was testimony by one Saunders that this hole or depression was rough, "humped up" and uneven, and was of a depth of as much as 10 inches below the rail. Photographs corroborated the existence of a dangerous condition for pedestrians. The jury could reasonably

[2]Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213; Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448; Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404; Mardorf v. Duluth-Superior Transit Co. 194 Minn. 537, 261 N. W. 177; 3 Dunnell, Dig. & Supp. § 5082.

infer that decedent in passing over this hole with its displaced cobblestones lost his firm footing and that as a result his forward-propelling power was decreased to such an extent that the cart wheels, without more, stopped at the easternmost rail. The jury could also reasonably infer that decedent, in order to regain a firm footing, pulled on the cart handle to steady himself, but that the rough and uneven hole in the pavement caused him to slip farther, so that he involuntarily stepped backward into the path of the oncoming car. It is significant that the intersection, as measured by the width of Eighteenth avenue, is only 33 feet wide, and that decedent was in the middle thereof, or only about 16½ feet from the north intersection line from which the streetcar was approaching. Although there is testimony to the contrary, the evidence sustains a finding that no signal was given by defendant motorman until after he had entered the intersection and was then less than half a car length from decedent. The jury could also reasonably conclude that the streetcar when entering the intersection was traveling at least 25 miles an hour and 20 miles or more at the time of the impact. In view of the fact that decedent with his loaded cart was in plain sight at all times—the motorman had first seen him at a distance of 140 feet—and that the motorman must have been reasonably familiar with the rough pavement over which decedent was passing, there is reasonable basis for a finding of negligence by way of excessive speed, failure to give a timely signal, and failure to keep the streetcar under proper control.

In the light of the condition of the pavement, as already herein noted, we cannot say that decedent was negligent as a matter of law. His stepping backward into the path or side of the car can reasonably be accounted for as an involuntary act for lack of proper footing in passing over the defective pavement between the tracks. Whether decedent was so familiar with the uneven condition of the pavement as a source of danger that he ought not to have attempted to cross the intersection at this point was, in the light of the evidence, for the jury. Decedent was a drinking man. After his death, and at least five hours after he was injured, a

sample of his blood was taken and tested for alcoholic content by a chemist, who found alcohol *then* present but in a quantity below the minimum accepted as indicative of intoxication. The chemist testified that at the average rate of alcoholic elimination for a normal living person decedent five hours earlier would have had sufficient alcohol in his blood to equal the minimum characteristic of intoxication. Whatever weight this testimony as to intoxication deserved was a factual matter for the jury. Taking the evidence as a whole, there is no basis for a finding of contributory negligence as a matter of law.

It follows that the motion for judgment notwithstanding—both as to negligence and contributory negligence—was properly denied, and likewise that the trial court did not err in refusing the required instruction that the condition of the pavement between the tracks was not a proximate cause of the accident.

■ Defendants argue that the testimony of Saunders, because of his prior criminal record involving conviction for burglary and extortion, is entitled to little weight. Truthful testimony may come from a bad source, and there is no arbitrary rule for measuring its credibility or persuasive weight. State v. Korsch, 168 Minn. 354, 210 N. W. 10; 6 Dunnell, Dig. §§ 10343a and 10344. The credibility of the witness was primarily for the jury, and we cannot say, in light of the surrounding evidence, that his testimony could not be accepted as substantially true.

■ The trial court charged the jury that the law requires the street railway company to pave and otherwise improve the space between its tracks so that it *shall correspond* with the improvement of the street outside the tracks. The controlling city ordinance (Minneapolis City Charter and Ordinances [Perm. ed.] 61:1-6) states that the pavement between the tracks shall *substantially correspond* with the pavement outside the tracks. In no manner was the inadvertent omission of the word *substantially* at any time called to the attention of the court. Although a formal exception need not be taken to an inadvertent omission or error in a trial court's instruction to the jury, such omission or error is no ground

for granting a new trial unless the trial court's attention has been seasonably directed thereto in some manner. Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862.

Plaintiff's counsel in arguing to the jury stated that the streetcar company had investigators scouring the countryside within a few hours after the accident. The statement was clearly improper. The trial court, however, by appropriate instruction to the jury eliminated any likelihood of resulting prejudice to defendants. We therefore find no prejudicial error. Certain other remarks of plaintiff's counsel, if erroneous, were without prejudice.

■ Photographs of the intersection taken five or six weeks after the accident were admitted into evidence to show the condition of the street surface. These photographs were admitted only after there was ample testimony to show that they accurately depicted conditions which were the same as those prevailing at the time of the accident. The adequacy of evidence required to establish that a photograph accurately portrays actual conditions in issue, as a foundation for its admission into evidence, rests in the sound discretion of the trial court. O'Neil v. Potts, 130 Minn. 353, 153 N. W. 856. We find no abuse of discretion.

■ A new trial was granted upon the sole issue of damages because the trial court was of the opinion that the jury had resorted to passion and prejudice in awarding plaintiff the maximum amount of damages.[3] In the exercise of a sound discretion, the trial court may, by reason of passion and prejudice exhibited in the award of excessive (or inadequate) damages, grant a new trial upon the sole issue of damages when it appears upon the evidence that the other issues, wholly unaffected by passion and prejudice, have been thoroughly litigated and justly determined, so that a right of recovery has been clearly established. Lundblad v. Erickson, 180 Minn. 185, 230 N. W. 473; May Department Stores Co. v. Bell, 61 F. (2d) 830, 842, 843; 16 Minn. L. Rev. 193. We find no abuse of discretion in limiting a new trial to the issue of dam-

[3]The wrongful-death statute, M. S. A. 573.02, was amended by L. 1951, c. 697, § 1, to increase the maximum amount from $10,000 to $17,500.

ages. A careful examination of the record fails to disclose that the determination of liability was in any manner or degree influenced by passion or prejudice. In fact, upon the cold record there is a serious question whether passion and prejudice played a material part in the award of damages. The trial court, however, had the advantage of both seeing and hearing the witnesses. In the light of the unsatisfactory state of the evidence on the issue of damages, we cannot say that the trial court erred in ordering a new trial upon the issue of damages.

The order of the trial court is affirmed.

Affirmed.