ARNOLD STRASHEIM V. STATE OF NEBRASKA.
294 N. W. 433

FILED OCTOBER 25, 1940.   No. 30972.

*Max Kier,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Don Kelley, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This case presents the question: In a criminal case where a felony is charged, is it prejudicial error, requiring a reversal of a judgment of guilt, for the trial court, without notice to and in the absence of the defendant and his counsel, to make an oral statement to the jury while that body is deliberating upon their verdict. We conclude that a reversal is required.

Defendant was convicted of the crime of manslaughter. At 8:45 a. m., some thirty-six hours after the cause had been submitted to them, and while they were deliberating, the jury reported in the courtroom. The regular hour for convening of court is 9 a. m. Neither defendant nor his counsel were present, nor were they notified to be present. Apparently, the county attorney was not present. The court addressed the jury orally, and the following discussion was had, the official reporter making the customary stenographic notes. The court asked the foreman if they had arrived at a verdict. Being told that they had not, the court commented upon the length of time that they had been deliberat-

ing, and stated that commonly juries were not discharged until they had deliberated for at least forty-eight, and sometimes fifty-six hours; that he supposed that they had had an "arduous time with it * * * deliberating, no doubt balloting a good deal." He asked the foreman how many ballots had been taken, and being told, replied, "Six ballots only?" The foreman stated, "But we have had an awful lot of discussion." The court asked, "And there is still a considerable difference, is there?" The foreman answered, "Yes; there is." The court then expressed regret that he could not release them, because they "ought to be able to decide this case;" that he could not tell them how; that his function was to wait until they had found "the fact * * * whether the defendant is guilty or not guilty;" that, after that, his function began; that, if further instructions would help, and if proper, he would be glad to give them, "but the case is an extremely simple one—the issue is clearly defined;" that as good a jury as they were "ought to be able to determine it;" that it had to be determined by a jury; that there had been "great expense, great cost of time and labor, great cost to the county already, and if it is possible for you to agree, you certainly ought to agree;" that he would not "constrain any jury," but that he wanted them "to go out and to further take up this case and try to lay aside your differences in any little rough edges that may have arisen," and "to lay those aside and ballot, not talk too long before you go into the balloting stage;" that he had known juries to take fifty ballots in the length of time this jury had been out; that he wanted them to "deliberate further" because they "ought to arrive at a decision;" that if they would "deliberate in the spirit of harmony and with a great desire to arrive at a determination of the facts * * * —the evidence is all pretty straightforward on one side or the other;" that "you don't have anything to do with fixing the punishment. That is reserved to the court under the law. * * * You are to find the fact. * * * That no person, not the highest in the land, can have a word to say to you in directing how you shall find because you are supreme. * * * Our President with

all his disposition to answer questions and direct the way couldn't say 'boo' to you * * * the Supreme Court of the United States, the Supreme Court of Nebraska can't say 'boo' to you. You are in the supreme place * * * in the function in which you perform." The court then asked if he could assist them in any way, if the instructions were plain to all, and said that he judged they were. He asked that any juror speak in regard to anything that the court could do. There was no reply from the jury. They were then (at 8:53 a. m.) told to retire, and "see what you can do for us." The journal entry shows that the same morning at 10:30 the jury returned a verdict of guilty, "recommending leniency."

Defendant, in his motion for a new trial and before this court, assigns this discourse as an error.

The defendant urges that the above statement to and with the jury was an invasion of his undoubted right to be present personally at all steps of the trial; that it constituted a comment to the jury as to the nature of the evidence; that it suggested the manner of their deliberations; that it found fault with the manner of their procedure; that it constituted an instruction to the jury not in writing; that it constituted an oral explanation of the instructions; that it tended to coerce the jury to reach a verdict; that the second reference to the penalty indicated that the court expected the jury to render a verdict of guilty; and that it told the jury their verdict would be immune from criticism.

This discourse on the part of the trial court violated the constitutional and statutory right that inheres fundamentally in the defendant's right to a jury trial, i. e., the right of a defendant when charged with the commission of a felony to be present personally at all times during his trial.

"The right of trial by jury shall remain inviolate." Const. art. I, sec. 6.

"In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel." Const. art. I, sec. 11.

"No person indicted for a felony shall be tried unless

personally present during the trial." Comp. St. 1929, sec. 29-2001.

Under section 29-2001, "Defendant has a right to be present at all times when any proceeding is taken during the trial, from the impaneling of the jury to the rendition of the verdict, inclusive, unless he has waived such right; and, it being a personal right to the defendant, the waiver thereof, if permitted, must be by him personally, and not by his attorneys." *Scott v. State,* 113 Neb. 657, 204 N. W. 381.

The defendant and his counsel are not obligated to remain constantly in the courtroom throughout the days and nights of the jury's deliberations in order that the accused may protect his rights. The defendant had the right to be present in the courtroom when this action was taken and to have his counsel there in order that he might have the advantage at every stage of the trial of the legal knowledge, training, and skill which his attorney possesses, and which presumptively he himself does not possess. It was the duty of the court not to resume the proceedings of the trial unless the defendant and his counsel were present.

"When the legislature has provided specific rules of court procedure intended for the protection of litigants, the courts should not countenance a flagrant departure therefrom." *Dow v. Legg,* 120 Neb. 271, 231 N. W. 747.

The state takes the position that defendant's counsel learned at 8:55 a. m. that the court had orally addressed the jury, and elected to do nothing about it; that no objection was made prior to the verdict; that corrective instructions were not requested nor a motion for a mistrial made; and contends that, having taken a chance on a favorable verdict, the defendant is now foreclosed from securing a new trial. Citing *Long v. Crystal Refrigerator Co.,* 134 Neb. 44, 277 N. W. 830; *Janesovsky v. Rathman,* 107 Neb. 165, 185 N. W. 411; *Bunting v. Oak Creek Drainage District,* 99 Neb. 843, 157 N. W. 1028; *Ford v. State,* 46 Neb. 390, 64 N. W. 1082.

There is no showing that the defendant knew anything

about what transpired. True, defendant's counsel knew at 8:55 a. m. that the court had addressed the jury that morning, but it is not shown that defendant's counsel knew the details of the discussion. There is no showing that he had an opportunity to question it at that time. Had he examined the court's journal, it would have shown the following entry: "Now on this day comes the jury * * * at nine o'clock a. m., into the jury box, and the court asks the jury if they require further instructions and upon learning they did not, asks them to retire to jury room for further deliberation and make a further effort to agree, and said jury retires." Certainly that entry did not reveal to the defendant what had transpired. It is not required that a defendant cross-examine bystanders, comb the corridors, or rely upon a court reporter's notes for information as to what transpires during his trial. He has the right to be in the courtroom with his counsel during the trial where they may know what happens. Whether or not a defendant may waive the errors here assigned is not presented. It is obvious that they have not been waived and that proper objection has seasonably been made.

The state cites the following provisions of the statute: "No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." Comp. St. 1929, sec. 29-2308. The state argues that it is our duty to examine the "entire cause" and determine whether or not a "substantial miscarriage of justice has actually occurred" and that, "if from an examination of the competent evidence it clearly appears that the defendant is guilty, then the errors should be disregarded."

A sufficient answer to this argument is found in *Scott v. State*, 121 Neb. 232, 236 N. W. 608.

To do as the state suggests would be for this court to

usurp the function of the jury. It is not our task to determine the guilt or innocence of the accused. That is the function of the jury. It is not for us to attempt to determine what the jury's verdict might have been had no error been committed. Our task is to determine whether or not a fair trial has been had and whether or not prejudicial error has been committed. It being manifest that a substantial invasion of defendant's rights has occurred, and that prejudicial error was committed by the trial court, the examination of further assignments of error becomes unnecessary, and the cause is

REVERSED AND REMANDED.