BRUNO B. ASBRA, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

12 N. W. 2d 845

FILED JANUARY 25, 1944. No. 31690.

*Clarence E. Haley*, for plaintiff in error.

*Walter R. Johnson, Attorney General, H. Emerson Kokjer* and *Rush C. Clarke*, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

Defendant was charged, in four counts, with the crime of arson. He was tried on two counts, and found guilty on one. He prosecutes error to this court, presenting by argument the contention that the evidence was insufficient to sustain the verdict and that the court should have sustained a motion for a directed verdict when the state rested and again when both parties rested; that the verdict of guilty on one count and not guilty on another is inconsistent; that there was error in the instructions to the jury and finally that the sentence imposed by the court was excessive. We sustain the judgment of the trial court.

It is not questioned but that the crime of arson was committed by some one. The question presented is the sufficien-

cy of the evidence to go to the jury and to sustain the jury's verdict that defendant was guilty.

The state's evidence detailed the following situation: The defendant operated a liquor store and recreation parlor in Wynot. He lived in a rented house. On the afternoon of January 10, 1941, his wife and son left the home at four p. m. and drove to Sioux City, Iowa, for a visit with her mother, taking personal property with her and leaving no one in the house. The defendant left his place of business about 6 or 6:30 p. m. and went home where he remained for 30 to 40 minutes, firing the furnace and eating a lunch. He locked the house and returned to his place of business sometime after 7 p. m. where he remained until the fire was discovered in his home. This discovery was made between 10 and 10:30 p. m. When notified that his house was afire, defendant apparently said nothing, went to the scene of the fire, arriving there some 20 or 30 minutes after the volunteer fire department reached the scene and had the fire extinguished. He told of money hidden in the house, which he recovered after his arrival, but showed to no one. When members of the fire department and neighbors arrived they found the house locked and a fire in the living room in and around a day bed and radio. They broke in, threw the bed out the window and put out the fire by the use of chemicals and water. There was a strong odor of kerosene on and about the day bed, on the floor of the kitchen, on rugs in two places in the house, in the basement and on a bed and bedding on the second floor. Binder twine was tied in a zigzag manner across the basement stairway, then strung across the kitchen to a bed in a room on the first floor and under a kerosene-soaked rug in an inside hallway, up the stairway to the second floor and tied to several articles of furniture there. The twine was burned in places on the second floor. An empty five-gallon can was found in a closet off the kitchen the night of the fire. When interviewed after the fire, defendant stated he had only $10 in outstanding debts, but some days later totaled this to something over $800 of debts. His furniture was mortgaged. On November 11, 1940, just

60 days before the fire, without an inspection or valuation by the agent, he had it insured for $1,400. The state's evidence showed that the furniture was overinsured. Electricity was ruled out as a possible cause. The state's experts, describing the situation they found, testified that the fire could have been started several hours before it was discovered.

At the close of the state's case they had established by evidence and by admissions of the defendant that some one, well acquainted with the inside arrangement of the house, had planned and set the fire; that the defendant was the last person known to have been in the house before the fire; that defendant left the house some two to three hours before the fire was discovered; that he locked the house securely and that the house was locked when firemen and neighbors reached it after the fire was discovered; that defendant first denied and then admitted his debts; that the property was overinsured; and, although clearly of incendiary origin, the fire could not have been started by defective electric wiring.

There is little conflict between the state's and defendant's evidence. The evidence for the defendant was largely devoted to showing that pictures, keepsakes and valuable possessions of the wife were in the house at the time of the fire, that the wife and son took nothing of particular value to Sioux City and that the property was not overinsured. The wife's testimony was that the house was in proper order when she left at four o'clock, having been fully cleaned and floors waxed that day; that the house was locked before she started for Sioux City and the key was left with the defendant at his place of business. The defendant detailed his day about as the state established by his admissions. He testified he had $365 hidden in the house that was being accumulated to pay for a renewal of his license. This he claims he salvaged and later gave to his wife. He needed, as we read the record, about $500 to secure another license for his business. He was in arrears in his rent. Although the fire was "out" by 11 o'clock that night he did not notify his wife or the owner of the house of the fire until

after 9 o'clock the following day. He denied any connection with the fire. Further recital of the evidence is not necessary. We consider it sufficient to carry the case to the jury and to sustain the verdict of guilty.

The defendant next complains that the verdict is inconsistent in that he was found guilty of setting fire to his personal property and not guilty of setting fire to the house in which it was located. However, as to that we have said the defendant cannot complain because he was acquitted of one offense and that he "was not prejudiced by the findings returned in his favor." *Weinecke v. State*, 34 Neb. 14, 51 N. W. 307.

It appears that there was some confusion as to the name of the insurance company that carried the risk on the household goods. There was no actual confusion as to the identity of the company. No issue was made as to it. The policy was in evidence. During the progress of the trial the true name was stipulated and by agreement the information was amended to set it forth. The trial court in his instruction number one erroneously named the company. The court did correctly name the company in his instruction number eight, wherein he recited the elements of the offense which the state was required to prove. We do not see how this error could have been prejudicial to the defendant.

On the matter of the credibility of witnesses the trial court instructed the jury, in part, as follows: "You are the sole judges of the credibility of the witnesses and of the weight to be given their testimony. You are not bound to accept as true any statement simply because it is sworn to by the greater number of witnesses, nor are you bound to accept the testimony of any witness as absolutely true, if for any good reason it appears to you unreliable or untrue. Yet you have no right to reject the testimony of any of the witnesses without good reason and should not do so unless you find it unreconcilable with other testimony which you find to be true." The defendant attacks the last sentence of this instruction and argues that the jury have the right for good reason to reject the testimony of any witness and that,

as a condition to rejection, it is not necessary that the jury find it "unreconcilable with other testimony" which they "find to be true." We are unable to see where the instruction was prejudicial to the defendant. The evidence was circumstantial and there was in it but little dispute on material matters. The question to be determined from the circumstantial evidence was whether or not the defendant was guilty of the offense. The defendant testified in his own behalf and denied that he had "anything to do with the setting of the fire." When applied to his denial the jury were directly instructed that they should not reject his denial as untrue unless it was found unreconcilable with other testimony which they found to be true.

Finally the defendant argues that the sentence is excessive. The statute authorized a sentence "for not less than one nor more than five years." Comp. St. Supp. 1941, sec. 28-5,102. The trial court fixed the sentence at two years. We do not consider the sentence to be excessive.

The judgment of the trial court is affirmed.

AFFIRMED.