JOSEPH JENNINGS, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.
36 N. W. 2d 268

Filed March 3, 1949. No. 32451.

*Eugene D. O'Sullivan, Arthur J. Whalen, Ernest S. Priesman, Eugene D. O'Sullivan, Jr.,* and *Warren C. Schrempp,* for plaintiff in error.

*James H. Anderson,* Attorney General and *Walter E. Nolte,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

Joseph Jennings was informed against and charged with the crime of murder in the second degree. He was convicted of the crime of manslaughter and sentenced to the penitentiary. He brings the case to this court by writ of error for review.

For convenience the plaintiff in error will hereafter be referred to as the defendant.

We set forth the evidence necessary to a determination of this proceeding in error.

The defendant, on February 12, and the early morning hours of February 13, 1947, was employed in tending bar in the Workmen's Club in Omaha, a club operated for the benefit of members only. On the dates mentioned, the members were holding open house to provide entertainment for the older people of the community.

The club is entered from the west into a small entryway. To the south is a door leading into a large barroom. About 14 feet 4 inches from the west wall is the front of the bar. There is a narrow back bar against the north wall, and a space of 4 feet 6 inches between it and the bar which is 26 feet in length east and west, 21 inches in width, and about 4 feet high. The room is furnished with tables and chairs, a juke box, and other club equipment. About 12 feet from the east end of the bar is a space flanked by two rails for service to the tables and to an annex to the south which is equipped with wire tables and chairs and has a dance floor. The entrance to the annex is opposite about the center of the bar. The only exit from the bar is a gate at the east end.

At approximately 10:45 p. m., one James Monday and some acquaintances entered the club and proceeded to the annex where they occupied two tables placed together and ordered some drinks. The defendant served them with beer and pop, and when more people joined the group the order was repeated and they were again served by the defendant. Shortly thereafter a disturbance occurred in the annex resulting in a fight among the members of the group which included Monday. The evidence is in conflict as to whether or not Monday participated in the fight. The defendant was assisted in tending bar by one Riley, both of whom went into the annex when the disturbance occurred. There is a conflict as to which arrived first. However, each had a gun. The defendant requested the group

to break up the fight and to get out and stay out. The defendant claimed the group had been using loud, profane, and indecent language, and that Monday, a large man 6 feet 6½ inches tall and weighing 270 pounds, threw a chair in his direction. He warned Monday if he came on, he would shoot. Riley testified when he went into the annex the fight had subsided and the people were standing up. Others in the room had scattered in different directions. The defendant testified that Monday stated he would return later. Riley heard a similar remark but did not know who made it. The group left the club in a few minutes.

About 12:45 a. m., Monday returned to the club and walked over to a table where his brother-in-law, Albert Rose, and a fellow by the name of Stewart were sitting. After some conversation Monday and Rose went to the bar and stood in the service space.

There is conflict in the evidence as to whether Monday stood to Rose's right or left. Monday ordered two bottles of beer and the defendant served them. Defendant was standing opposite Rose, behind the bar. Monday mentioned something about the defendant drawing a gun on him and his acquaintances earlier. Rose was about to question the defendant about the matter when the defendant said: "Yes, I drew a pistol on you: what are you going to do about it?" Rose testified that the defendant reached in his right rear pants pocket for a gun and fired one shot which hit Monday.

Stewart corroborated the conversation and the shooting, as heretofore related, except he did not know where the defendant procured the gun.

One Harrison Brown, Jr., who was standing with his back to the bar at the east end thereof listening to the juke box against the south wall of the barroom, did not hear the conversation between Monday, Rose, and the defendant, but heard the shot, turned around and saw the defendant with a gun in his right hand at a

45 degree angle. The defendant was backing away from the bar toward the east exit. Monday stumbled back from the bar, placed his hands to his chest and went out the door into the entryway.

According to Riley and the defendant, the guns, one an automatic and the other a 41 Colt which the defendant used, were kept in a pull-out drawer in the back bar. The drawer was pulled open and the defendant said that is where he got the gun at the time of the shooting.

Riley was sitting at the east end of the bar reading a newspaper and listening to the juke box. He did not hear the conversation between Monday, Rose, and the defendant. He heard the shot and went to the rear of the club to get the manager, where she had rooms.

The defendant testified that when Monday came into the barroom several of the people left. When he arrived at the bar, Monday ordered some beer and said in a harsh way that he did not want a glass. The defendant further testified that when he returned with the beer Monday said: " 'these guys made a gun play here this evening, put us out of here with a gun.' He said 'I told him I was going to make him back it up.' Mr. Rose said 'You watch that fellow setting down there'—Mr. Riley. * * * I said 'I thought that was over with; you are not supposed to come in here any more.' He said 'I told you I was coming back: what are you going to do about it?' " The defendant further testified that Monday "started for his coat pocket with his right hand. It was then I reached for the gun. I said 'Mr. Monday, don't do that. Now, I told you fellows to stay out of here', but he continued to go to his pocket. I came up with the gun and it went off." The defendant did not know that he had shot Monday, but told him: "Now, you get out of here and stay out of here."

The defendant further testified that Monday had seen him earlier with the weapon and told him he was

coming back, and he figured that he would. He tried to treat Monday nice, but the better he treated him the more he tried to start an argument. He was afraid of Monday and feared Monday would injure him or take his life. Remarks were made which he heard, that Monday would return and clean the place up. The defendant admitted he fired the shot, and surrendered the gun to the police officers.

The bullet penetrated Monday's heart and caused his death in a few minutes. There is no evidence that Monday was armed either the first time he was in the club or when he returned to the club the second time.

The defendant requested an instruction on the doctrine of falsus in uno, falsus in omnibus.

In the case of Knihal v. State, *ante* p. 771, 36 N. W. 2d 109, this court held: "The maxim 'he who speaks falsely on one point will speak falsely upon all,' deals with the weight of evidence and the credibility of witnesses. It is not prejudicial error for the trial court to fail or refuse to give an instruction to a jury based on the maxim, 'he who speaks falsely on one point will speak falsely upon all.' "

In view of the foregoing authority, the defendant's contention is without merit.

Instruction No. 14, given by the trial court on its own motion, relating to the credibility of witnesses included the statement: "Yet you have no right to reject the testimony of any of the witnesses without good reason, and should not do so, unless you find it irreconcilable with the other testimony which you find to be true." A similar statement was recently held to be prejudicially erroneous in Wilson v. State, *ante* p. 436, 34 N. W. 2d 880, wherein it was held: "In jury cases juries are the judges of the credibility of witnesses and of the weight to be given their testimony and, within their province, they have the right to credit or reject the whole or any part of the testimony of a witness in the exercise of

their judgment. An instruction in a criminal case the effect of which is to infringe upon the right of a jury as the judge of the credibility of witnesses and the weight to be given their testimony is an invasion and an abridgment of a substantial right of the defendant."

While the circumstances in the instant case relating to the purported application of the instruction are not identical with those in the foregoing case, the basic rules promulgated in the cited case are applicable in the instant case, and the quoted qualification being prejudicially erroneous, should not have been included in the instruction, because, when applied to the state's witnesses, the rule imposed a burden upon the defendant which he was not required to assume. See, Frank v. State, *ante* p. 745, 35 N. W. 2d 816; Swanson v. State, *ante* p. 761, 35 N. W. 2d 826; Knihal v. State, *supra.*

The giving of this instruction, among others, was assigned as error in the motion for a new trial and in the petition in error. It is not particularly assigned as error by the defendant in his brief here. We consider the instruction to be a plain error which may be noted under Rule 8 a 2 (4) of this court. See Knihal v. State, *supra.*

The defendant's assignment of error that the trial court failed to instruct the jury properly and fully upon the defendant's theory of the case of shooting in self-defense, and accidental shooting, is based upon the present record and the details of the testimony. A reversal granting a new trial being required, which will involve a new record, we do not deem it necessary to determine this assignment of error.

For the reasons given herein, the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.