HAROLD R. SCHLUTER, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

37 N. W. 2d 396

Filed May 3, 1949.   No. 32485.

*Bernard J. Boyle* and *Hugh J. Boyle,* for plaintiff in error.

*James H. Anderson,* Attorney General, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an appeal from a judgment and sentence based upon a jury's verdict finding the defendant guilty of manslaughter. We reverse the judgment and remand the cause because of prejudicial error in an instruction.

Before discussing the details of the evidence, we deem it necessary to set out the issues that were submitted to the jury.

The information charged two offenses in two counts. As originally filed, the first count charged that the defendant unlawfully and feloniously, but without malice, did kill and slay one Freddie Freelin. The second count charged the defendant with leaving the scene of the accident. This need not be further mentioned for the jury found defendant not guilty as to the second count. At the beginning of the trial defendant demanded a bill of particulars. Thereupon the county attorney amended the information and alleged that the unlawful acts of the defendant which caused the death were: (1) Operating his motor vehicle while under the influence of intoxicating liquor; (2) operating his motor vehicle at a high, dangerous, and reckless rate of speed and at a rate of speed not proper under existing circumstances, to wit: 60 miles per hour; and (3) operating his motor vehicle on the wrong or left side of said highway.

The trial court set out these three allegations and instructed the jury that if it found that the defendant did commit "any of the unlawful acts charged," subject to other qualifications not necessary to be mentioned, the jury should find the defendant guilty of manslaughter.

After having deliberated for some time, the jury returned to the court room and inquired if the defendant would be guilty of manslaughter if he committed one of the acts charged in the manslaughter count. The jury further asked to be advised as to the meaning of the "to-wit 60 miles an hour" phrase. The court advised the jury to return to the jury room. The defendant was present at this time. His attorneys were not. Thereafter defendant's attorneys arrived and orally requested that the jury be instructed, if its verdict were guilty on the manslaughter charge, that it indicate by

the verdict which one of the alleged unlawful acts was committed by the defendant. The trial court refused the request. The court then instructed the jury that the three unlawful acts charged were separate and distinct acts, and that if the jury found that the defendant had committed any one of the alleged unlawful acts and thereby caused the death, the jury should find the defendant guilty of manslaughter. The court further instructed that "to-wit 60 miles an hour" meant "namely 60 miles an hour." After several hours of deliberation, the jury returned a verdict of guilty of manslaughter, and not guilty of leaving the scene of an accident. To the verdict the jury added a recommendation of clemency and that defendant "be examined by a psychiatrist and be given adequate treatment." When the jury was polled, one juror called specific attention to these two recommendations.

There is no way to tell from this record which one or more of the alleged unlawful acts are the foundation for the verdict of guilty.

Generally the events of the evening resulting in the death of Mr. Freelin are as follows. The defendant purchased a case of beer about 6:30 in the evening. Four boys and a girl were then in the party with two automobiles, coupés, as conveyances. They went to a secluded place and the four boys drank the beer during a period of 45 minutes to an hour or more. They then got the sister of the girl, and the defendant bought another case of beer, and the six drove in the two cars to a park, where a part of the second case of beer was consumed by the four boys. About 10:30 in the evening a dispute arose resulting in a fight between the defendant and one of the boys, during which the windshield and one headlight of defendant's car and a beer bottle were broken. It appears that one of the boys took the keys from the ignition of defendant's car and the fight arose because of it. The State's contention is that the keys were taken because the boys thought defendant

was too intoxicated to drive. It is defendant's contention that he wanted to go home; that the others wanted to remain; and that the keys were taken to compel him to remain until the others were ready to leave, so that the five would not have to return home in a one-seated car. In this connection, defendant's mother testified that defendant was a nervous, easily-irritated child, subject to lack of control of temper, and when irritated became at times somewhat violent. Defendant got the keys and, alone in his car, left the park and entered a highway that was not well lighted.

Two teams drawing hayracks carrying groups of students out for a ride were then on the highway. One wagon had stopped on the road, preparatory to turning around, and some of the students had gotten to the ground and were standing on the black-top roadway beside the wagon. The other wagon with its party was several hundred feet beyond.

The defendant came down the highway and when a few feet from the standing wagon suddenly turned his car toward it, striking the rack on the left front corner and sideswiping it. Mr. Freelin was standing beside the rack and was killed. Defendant in his car went a few hundred feet on down the road, where he was either thrown or got out of his car. The driverless car went on and finally collided with the second hayrack.

The trial court instructed the jury that "It is your duty to scrutinize carefully and to weigh dispassionately, the testimony of all the witnesses giving the several parts of the evidence such weight as in your judgment they should receive.

"Weight of evidence depends upon the credibility of witnesses, their accuracy of observing and remembering, their interest, bias or prejudice, if any, and their means of knowing the matters concerning which they testify.

"You are the sole judges of the credibility of the witnesses, and the weight to be given their evidence. You are not bound to accept as true any statement simply

because it is sworn to by the greater number of witnesses, nor are you bound to accept the testimony of any witness as absolutely true, if for any good reason it appears to you unreliable or untrue. *Yet you have no right to reject the testimony of any of the witnesses without good reason, and should not do so, unless you find it irreconcilable with the other testimony which you find to be true.*" (Emphasis supplied here.)

The giving of this instruction. was assigned as error in the motion for a new trial and in the petition in error here.

Defendant's brief was filed here on November 13, 1948. In his assignments of error defendant did not make complaint as to this instruction.

On November 26, 1948, our opinion in Wilson v. State, 150 Neb. 436, 34 N. W. 2d 880, was filed; on February 11, 1949, our opinions in Frank v. State, 150 Neb. 745, 35 N. W. 2d 816, and Swanson v. State, 150 Neb. 761, 35 N. W. 2d 826, were filed; on February 25, 1949, our opinion in Knihal v. State, 150 Neb. 771, 36 N. W. 2d 109, was filed; and on March 3, 1949, our opinion in Jennings v. State, 150 Neb. 828, 36 N. W. 2d 268, was filed. In each of these cases we held that the giving of an instruction containing substantially the same language as the last sentence above quoted was erroneous and under the facts and circumstances of each case was prejudicial.

By supplemental brief filed herein on March 4, 1949, defendant presents the giving of this instruction as prejudicial error requiring reversal. By supplemental brief the State joins issue and requests that we re-examine and limit the application of the holdings as to when the giving of the instruction constitutes prejudicial error.

While not directly stated in the cited cases, it is clear the holding is that the giving of an instruction containing the language here involved is erroneous under all circumstances. An erroneous instruction should not be given in any case. The State does not contend other-

wise. It contends rather that the instruction should be held to be prejudicial only in those cases where the State's evidence stands uncontradicted, and held to be not prejudicial in cases where there has been testimony both by the State and the defendant touching on the same facts at issue. In short, it is the State's contention that the instruction is not prejudicial where it applies with equal force to the State and to the defendant, and that such is the effect of our holdings in the Wilson, Knihal, and Jennings cases, *supra*.

The State would have us hold that this instruction, when applied to uncontradicted evidence of the State, is prejudicial, but cannot be prejudicial if applied to contradicted evidence. The effect of that contention is to say that contradicted evidence stands in a better probative position and is entitled to more weight than uncontradicted evidence. To so state it is to answer the contention. Likewise, to so hold would be to say in effect that the instruction is erroneous only under an uncontradicted evidence situation. The State overlooks the fact that by a plea of not guilty, maintained throughout the trial, the defendant challenges all the State's evidence.

Upon a plea of not guilty the defendant is clothed with the presumption of innocence which stands as evidence in his favor until the State by its proof shows him to be guilty beyond a reasonable doubt, and all doubts must be resolved in his favor. Behrens v. State, 140 Neb. 671, 1 N. W. 2d 289.

Contrary to the State's contention the cited cases do not so limit the holdings there made. In the Wilson case, *supra,* there was no testimony for the defendant in contradiction of the State's evidence. The plea of not guilty challenged it. We said in the Wilson case: "The testimony of no witness, especially if the witness be an accomplice, is surrounded with such sanctity as to require it to be accepted by triers of fact as true in the absence of controversion by other witnesses or con-

flict with other testimony." This is but a particular application of the rule stated in Chezem v. State, 56 Neb. 496, 76 N. W. 1056, that "* * * the triers of fact are not required to accept as true all sworn testimony, though not directly impeached or contradicted." See, also, Teresi v. Filley, 146 Neb. 797, 21 N. W. 2d 699. We further said in Wilson v. State, *supra*: "This court has consistently held that in cases tried to them juries are the judges of the credibility of witnesses and of the weight to be given to their testimony and, within their province, they have the right to credit or reject the whole or any part of the testimony of a witness in the exercise of their judgment. * * * The right of a defendant in a criminal case, or in truth the right of a litigant in any case triable to a jury, to have the jury weigh the evidence free from interference, we think, is a substantial right and a restriction upon or abridgement of that right by the trial court in instructions to a jury amounts to the deprivation of the benefits of this substantial right."

While, under the facts of the Wilson case, the State's evidence stood uncontradicted, the decision does not limit the prejudicial error holding to that situation. The Knihal case, *supra,* does not limit the question of prejudicial error to uncontradicted evidence. We specifically held there that prejudicial error followed when considering both contradicted and uncontradicted testimony of the State's witnesses. We find nothing in the Jennings decision, *supra,* to sustain the State's position.

The State, quoting from the Chezem case, *supra,* asserts that in cases where the State's evidence is contradicted by the defendant's evidence, the instruction is not prejudicial because it is "alike applicable to all the witnesses in the case whether examined on behalf of the prosecution or defense." There are several answers to this contention. The burden of the State and the defendant is not the same. The State is required to prove guilt beyond a reasonable doubt. The defendant has

no such burden. The defendant may, without offering evidence, submit the cause to the jury on the contention that the State has not met its burden of proof, or he may offer evidence and submit his cause to the jury on the ground that a reasonable doubt exists in the light of all the evidence.

In Frink v. State, 56 Fla. 62, 47 So. 514, where the evidence was conflicting, the jury was instructed that it had a right to reject any testimony which it could not reconcile with other testimony. The instruction was held clearly erroneous, the court stating that "The jury has no right to reject testimony because they are unable to reconcile it with other testimony, irrespective of whether that other testimony carries conviction to their minds. The testimony of the State may connect a defendant with the crime charged. The defendant's testimony may show he had no connection with it. The testimony is, therefore, irreconcilable, for a defendant cannot be at the same time guilty and not guilty. Under such circumstances a defendant might be entitled to an acquittal under the rule of reasonable doubt."

The State overlooks the sentence in the Chezem case, *supra,* next following the sentence it quotes which is: "The court by this instruction in no manner criticised, or cast reflections upon, the testimony of the accused, but properly allowed the jurors to decide for themselves the weight his testimony should receive." The vice of the instruction here is that it does not allow the jurors to decide for themselves the weight the defendant's testimony is to receive.

But the State argues that under the instruction the jury is not to believe the State's witnesses unless it first finds that the evidence of the defendant's witnesses is untrue. We are not here determining whether or not the instruction may be prejudicial to the State, but whether or not it may be prejudicial to the defendant.

In Donner v. State, 72 Neb. 263, 100 N. W. 305, 117 Am. S. R. 789, we said: "Indeed common experience

teaches us that juries are prone to view the evidence of one who is on trial for a criminal offense with suspicion, and the court should not, by his conduct or instructions, in any manner disparage the evidence of the accused." We there held prejudicial, as disparaging the testimony of the accused, an instruction which told the jury that it was not required to receive the testimony of the defendant as true, but could consider that it might have been given in bad faith and for the purpose of avoiding a conviction.

In Burk v. State, 79 Neb. 241, 112 N. W. 573, we considered and criticized an instruction which told the jury that in considering the credibility of the defendant as a witness it had a right to consider " '* * * the fact that he has been contradicted by other witnesses, if the jury believe from the evidence that he has been so contradicted, but the degree of credit given to each and all of the witnesses is a question for the jury alone, and not for the court.' " We there said: "But the vice of the instruction lies in that part of it by which the jury were told that if the defendant had been contradicted by other witnesses, if they should believe from the evidence that he had been so contradicted, that fact should be considered in determining the degree of credit to be given to his testimony. That part of the instruction seems to be an invasion of the legal rights of the defendant."

In Holmes v. State, 85 Neb. 506, 123 N. W. 1043, in considering an instruction dealing with the testimony of a defendant we said: "The court should not attempt to discredit him and destroy the effect of his evidence, but should leave its weight and credibility to the jury without unfavorable comment."

But it is argued that the instruction deals only with the credibility of witnesses and not with the burden of proof, and that our reason, given in the Frank, Knihal, and Jennings cases, *supra*, that the instruction, when applied to the State's witnesses, imposes a burden upon

the defendant which he is not required to carry, is erroneous. The matter of the credibility of a witness goes to the weight to be given to his evidence, and the weight to be given to evidence goes to the question of whether or not the State has met the burden of proof. The credibility of the witness is an element in the process of determining the ultimate question of whether or not the burden of proof of the State has been met.

In this as in all criminal cases upon a plea of not guilty the State is required to establish beyond a reasonable doubt every material allegation in the information. The State undertakes to do that by producing the testimony of witnesses. The jury then weighs that testimony to determine whether or not the State has met that burden. The weight of that evidence depends, among other things, upon the credibility of the witnesses. Naturally, for it is the evidence first produced, and under the instruction properly, the jury is first to determine the credibility of the State's witnesses. If it determines that their testimony is not to be credited, then its verdict is for the defendant.

But here the jury in that process of determining whether or not the State has met its burden of proof is confronted by an instruction which, when applied to the State's witnesses, directs that it should not reject the evidence of the State's witnesses which is irreconcilable with the defendant's evidence, unless it first finds the defendant's evidence is true. The jury then is required first to find whether or not the evidence for the defendant is true. The question of the credibility of the State's witnesses is made to depend upon the credibility of the defendant's witnesses. If the jury finds that defendant's evidence is not true, then the instruction requires that the jury accept the evidence of the State as true. When the jury reaches that point in its deliberations, if it finds that the defendant's evidence is not true, then the case stands with the jury considering, in effect, the uncontradicted evidence of the State, and the disapproval of

the instruction as applied in the Wilson case and the Knihal case (in part) comes into force.

Accordingly we find no merit in the State's contention that the instruction can be prejudicial only in those cases where the evidence of the State stands uncontradicted.

We said in a syllabus point in the Frank case, *supra,* that the giving of such an instruction in a criminal case was "ordinarily" prejudicial error. We there recognized that cases might arise where the giving of the erroneous instruction might not be prejudicial to the defendant. Asbra v. State, 144 Neb. 146, 12 N. W. 2d 845, was such a case. There we found that the facts and circumstances were such that the instruction was not prejudicial to the defendant. Contrary to the State's contention that decision does not hold that the giving of the instruction was not error.

We come then to this question, was the giving of the instruction without prejudicial error in this case?

The evidence is in conflict as to whether or not defendant was under the influence of intoxicating liquor. There is no dispute but that during the approximately four hours involved, the defendant drank beer. The State's witnesses who were with defendant do not agree as to the number of bottles of beer defendant drank. Most of the witnesses fix the amount consumed by defendant at 10 to 12 bottles. The liquid content in a bottle is not shown, nor is the alcoholic content, if any. The defendant fixes the number of bottles he drank at 4 or 5. The State's witnesses testified that in their opinion the defendant was under the influence of intoxicating liquor when he left the park just before the accident. The defendant testified that he was not. It is in evidence, however, by a statement given some hours thereafter that he admitted he was "feeling" the liquor and was "a little dizzy." A blood sample was taken an hour or two after the accident and alcohol found. The accuracy of the analysis is questioned by the chemist

who made it. Assuming it is correct, the experts are in disagreement as to whether or not it shows a sufficient amount to be the basis of a finding that defendant was under the influence of intoxicants. They likewise are in disagreement as to whether the amount of beer consumed, as testified by the State's witnesses, in the time involved would have produced a condition within the requirement of being under the influence of liquor.

The State's witnesses fixed the speed of defendant's car at 50 to 60 miles an hour by various forms of expression. Defendant testified that his speed was 25 to 30 miles an hour.

The evidence as to operating on the wrong or left side of the highway is not in conflict. All the witnesses testify that defendant came toward them driving on his own or right side of the highway and that when he was within a few feet of the horses he pulled suddenly to the left and struck the rack. The only lights on the front of the rack were electric, manually operated. There is a dispute as to whether or not they were turned on and showing at the time. Defendant testified that he came down the highway and saw two large objects on the black-top road; and that then he saw people going across the highway to the right, and he turned to the left to avoid hitting them and struck the rack. There is a dispute as to the location of the rack. The State's witnesses put it on its extreme right side of the road. The defendant produced a witness who testified to having seen its location at the time of the accident and to having checked the next morning the steel wheel marks where it turned. He positively stated the rack was in the middle of the road.

The rule is: "It is presumed a jury followed the instructions given in arriving at its verdict and, unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded." Webber v. City of Scottsbluff, 150 Neb. 446, 35 N. W. 2d 110. We must presume then that in weighing the evidence

the jury followed the court's instructions and did not reject the State's evidence, and that because it found that the defendant's evidence was not true. It necessarily follows that the giving of the instruction was prejudicial error.

The State cites section 29-2308, R. S. 1943, and argues that no substantial miscarriage of justice has actually occurred, and hence that the judgment should not be reversed because of the instruction. The provision of the statute relied upon is as follows: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." § 29-2308, R. S. 1943.

In the Wilson case, *supra*, we restated the holding that where a substantial right of a defendant has been invaded or abridged this statute may not be effective to sustain a conviction. The statute has no application where the province of the jury is prejudicially invaded. See Kleinschmidt v. State, 116 Neb. 577, 218 N. W. 384. See, also, Scott v. State, 121 Neb. 232, 236 N. W. 608.

In Strasheim v. State, 138 Neb. 651, 294 N. W. 433, we considered a similar contention based upon the same statute. We there said: "To do as the state suggests would be for this court to usurp the function of the jury. It is not our task to determine the guilt or innocence of the accused. That is the function of the jury. It is not for us to attempt to determine what the jury's verdict might have been had no error been committed. Our task is to determine whether or not a fair trial has been had and whether or not prejudicial error has been committed. It being manifest that a substantial invasion of defendant's rights has occurred, and that prejudicial error was committed by the trial court, the examination

of further assignments of error becomes unnecessary, and the cause is reversed and remanded."

Of the other assignments of error made, one obviously will not arise upon a new trial, three have to do with the foundation for the admission of evidence, and three with instructions requested by the defendant and not given by the court. It does not appear certain that these questions here presented will arise upon a new trial and hence they are not determined.

For the reasons given the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

YEAGER, J., concurring.

I have joined with the majority in the opinion adopted in this case because I think it goes far enough for the purpose, on the record, of determining the issues presented by the appeal. However as to the instruction which is brought into question I am persuaded that its giving in any civil or criminal case is prejudicial error and that it would have been well to so state in the opinion. I cannot conceive of a case wherein it could be said that it could not be calculated to be misleading and confusing to a jury.

If by its terms it may be said that the instruction is confusing, conflicting, and calculated to mislead, I fail to see how this court can say that it did not so confuse and mislead.

This court has never departed from the proposition that to give, on material matters, contradictory or conflicting instructions is prejudicial error. It cannot be any the less error if the contradiction or conflict appears in a single instruction. I think it a fair statement that where it is clear that an instruction could have misled a jury such instruction must be deemed prejudicial. This proposition is axiomatic.

The portion of the instruction complained of in this case is the following: "Yet you have no right to reject the testimony of any of the witnesses without good rea-

son, and should not do so, unless you find it irreconcilable with the other testimony which you find to be true." This is a sentence of an instruction which earlier therein correctly informed the jury that they were the sole judges of the credibility of the witnesses and of the weight to be given their testimony.

Can this sentence be anything less than a restriction upon and an inhibition against the right of a jury to test the credibility of each witness on his own merits? Does it not effectually inform the jury that they must accept the testimony of each and every witness as true in the absence of other testimony found to be both irreconcilable and true?

It was held in Wilson v. State, 150 Neb. 436, 34 N. W. 2d 880, and I think correctly, that notwithstanding the earlier directions, explanations, and admonitions of the instruction, this portion of the instruction failed to leave the jury free to reject testimony as false or incredible even though they may have disbelieved it or had a reasonable doubt as to its falsity or credibility. I am of this opinion notwithstanding a contrary holding of this court in dealing with this particular instruction in this same connection in Moore v. Pacific Mutual Life Ins. Co., 128 Neb. 605, 259 N. W. 916. A question propounded in the opinion therein is as follows: "Besides, how could they decide that any witness had testified falsely except by comparison of his testimony with other facts testified to or by the implication of other testimony?" It imports its own answer but the imported answer is insufficient. It fails to embrace, for instance, the discredit which may appear from the very nature of the testimony under a given set of circumstances or which may result upon cross-examination.

In a criminal case conviction may be had only on evidence and the proof must be beyond a reasonable doubt. This instruction, in a criminal case where the State has adduced evidence on an element or elements necessary to be proved and the defendant adduces none, requires

that the jury shall accept the evidence of the State as true. It does not under such circumstances permit of rejection of all or any part of such evidence no matter how fantastic or incredible it may appear on its face and no matter that it may have been completely discredited by cross-examination.

A defendant in a criminal case is not required to prove his innocence. He is not required to disprove his guilt or any of the elements of the charge against him. If the charge or any of its elements lacks proof by evidence beyond a reasonable doubt, he may not properly be found guilty.

In application of the inhibition of this instruction to the following hypothesis let us see what the end result would be. A witness for the State has testified with regard to an element of a criminal charge and nothing appears from the witness or his testimony to suggest incredibility. The defendant or a witness then gives directly opposite testimony which testimony has the appearance of incredibility yet it has enough of quality and substance to cause the jury, not to accept it as true, but to have a reasonable doubt as to its truth or falsity. Certainly the defendant is entitled to the benefit of that doubt, but the jury are told by this instruction that in such circumstances they may not reject the testimony of the witness for the State unless they find that the testimony of the defendant or his witness is true.

In a case where witnesses testify on opposite sides of a case and to opposite effect and it is readily apparent to the jury that the testimony of each is fully and equally incredible the inhibition of the instruction is that neither may be rejected for the explicit reason that the opposite is not found to be true.

If it be suggested that prejudicial error does not exist in a case where the testimony which under the instruction must be accepted as true is testimony of the defendant or his witnesses, a sufficient answer is that any instruction with regard to the manner of weighing testi-

mony and credibility of witnesses applies to witnesses for the State as well as to a defendant and his witnesses. The State has as much right to expect that a jury in a criminal case will be instructed correctly and properly as the defendant. It may not well be said and it does not follow that error against the State may not be regarded as prejudicial because from an adverse verdict it may not on appeal obtain a reversal of the judgment on such verdict.

MESSMORE and BOSLAUGH, JJ., concurring.

WENKE, J., dissenting.

I dissent from that part of the majority opinion which holds that the giving of instruction No. 15, particularly the last sentence thereof, "was prejudicial error." It likewise follows that I do not agree with the concurring opinion which holds the giving of this instruction, in any civil or criminal case, would be prejudicially erroneous and require reversal.

I do not necessarily dissent from that part of the majority opinion which reverses and remands the cause to the district court for retrial. This, for the reason that there are other errors complained of which might or might not make such decision proper. However, in view of the majority holding, it would serve no useful purpose to decide that question.

Instruction No. 15, as given by the court, is as follows:

"It is your duty to scrutinize carefully and to weigh dispassionately, the testimony of all the witnesses giving the several parts of the evidence such weight as in your judgment they should receive.

"Weight of evidence depends upon the credibility of witnesses, their accuracy of observing and remembering, their interest, bias or prejudice, if any, and their means of knowing the matters concerning which they testify.

"You are the sole judges of the credibility of the witnesses, and the weight to be given their evidence. You are not bound to accept as true any statement simply because it is sworn to by the greater number of witnesses,

nor are you bound to accept the testimony of any witness as absolutely true, if for any good reason it appears to you unreliable or untrue. Yet you have no right to reject the testimony of any of the witnesses without good reason, and should not do so, unless you find it irreconcilable with the other testimony which you find to be true."

This instruction deals with the credibility of witnesses and the weight of their evidence. It is for the purpose of informing the jury of their duty and responsibility in regard thereto. That is strictly a jury duty and function and should not be encroached upon by the trial judge either by comment or otherwise. I agree that the trial court was in error by adding these words to the last sentence of this instruction: "* * * and should not do so, unless you find it irreconcilable with the other testimony which you find to be true." This language erroneously qualified the jury's privilege of rejecting the testimony of any witness for good reason.

But every error does not necessarily require reversal. Before a reversal should be entered because thereof it must appear from the record that the error complained of can be said to have prejudicially affected the rights of the party complaining thereof.

We have recently dealt with this instruction in cases where the same or similar language was used.

In Wilson v. State, 150 Neb. 436, 34 N. W. 2d 880, we held, where there was no irreconcilable testimony or testimony to the contrary, that the giving of such an instruction was prejudicially erroneous. This, in my opinion, is correct in a criminal case.

In Frank v. State, 150 Neb. 745, 35 N. W. 2d 816, we held that it is ordinarily prejudicial error to give such an instruction. This case was reversed on other grounds and, necessarily, no occasion arose to discuss whether the instruction was prejudicially erroneous. In my judgment that case did not decide the question now before us. It only sought to advise the trial judge not to use the same

language on retrial. The same is true of the companion case of Swanson v. State, 150 Neb. 761, 35 N. W. 2d 826.

In Knihal v. State, 150 Neb. 771, 36 N. W. 2d 109, we held the giving of such an instruction prejudicial error but brought it within the scope of our holding in Wilson v. State, *supra*, although language is used therein which supports the holding of the majority.

In my opinion the only case we have decided directly sustaining the majority view is that of Jennings v. State, 150 Neb. 828, 36 N. W. 2d 268. Therein we considered the instruction to be such a plain error that we took note thereof and, under a factual situation similar to that in the case at bar, held the giving of the instruction to be "prejudicially erroneous." I now think we were in error in doing so.

In both the Knihal and Jennings cases the giving of this instruction was not here presented as error but under our rule 8 a 2 (4) we took note thereof.

It seems significant to me that in the cases recently decided which support the majority opinion, wherein we did not have the advantage of briefs because we took note of this instruction as a plain error under our rules, we did not take into consideration our previous holdings on similar or like instructions wherein, under situations such as here, we held them not to be prejudicially erroneous.

In Moore v. Pacific Mutual Life Ins. Co., 128 Neb. 605, 259 N. W. 916, which is a civil suit on an insurance policy, the court said: "Appellant criticizes the last sentence only, which reads: 'Yet you have no right to reject the testimony of any of the witnesses without good reason, and should not do so until you find it irreconcilable with other testimony you may find to be true.'

"Appellant says that this part of the eighth instruction tells the jury they must accept testimony they have found under the sixth instruction to be false because there may be no other testimony on the particular matter and therefore no testimony with which to compare it

and decide it 'irreconcilable.' This is splitting hairs too fine for us to believe the parts could be seen by the jury. Besides, how could they decide that any witness had testified falsely except by comparison of his testimony with other facts testified to or by the implication of other testimony? In our opinion the error assigned is not tenable. The instruction complained of is held free from prejudicial error."

And in Asbra v. State, 144 Neb. 146, 12 N. W. 2d 845, which is a criminal action, this court said: "On the matter of the credibility of witnesses the trial court instructed the jury, in part, as follows: 'You are the sole judges of the credibility of the witnesses and of the weight to be given their testimony. You are not bound to accept as true any statement simply because it is sworn to by the greater number of witnesses, nor are you bound to accept the testimony of any witness as absolutely true, if for any good reason it appears to you unreliable or untrue. Yet you have no right to reject the testimony of any of the witnesses without good reason and should not do so unless you find it unreconcilable with other testimony which you find to be true.' The defendant attacks the last sentence of this instruction and argues that the jury have the right for good reason to reject the testimony of any witness and that, as a condition to rejection, it is not necessary that the jury find it 'unreconcilable with other testimony' which they 'find to be true.' We are unable to see where the instruction was prejudicial to the defendant. The evidence was circumstantial and there was in it but little dispute on material matters. The question to be determined from the circumstantial evidence was whether or not the defendant was guilty of the offense. *The defendant testified in his own behalf and denied that he had 'anything to do with the setting of the fire.' When applied to his denial the jury were directly instructed that they should not reject his denial as untrue unless it was found un-*

*reconcilable with other testimony which they found to be true."* (Italics mine.)

Here the evidence is in conflict on issues which determine the guilt or innocence of the defendant. It was the jury's duty and function to consider this irreconcilable conflict and decide which side was telling the truth. That, in my judgment, is the effect and purpose of the language used. While the court should not have instructed the jury as it did, nevertheless, the language applies equally to the evidence on both sides and, when so applied, it does not, in my judgment, prejudice the defendant in any of his rights.

In my opinion our prior holdings, particularly in the Asbra case, are correct and should be followed. Certainly they justified the trial court in using the language which is here held to be prejudicially erroneous.

CARTER, J., concurring in this dissent.