LEAH KEISERMAN, APPELLEE, v. EDWIN M. LYDON,
APPELLANT, IMPLEADED WITH LESLIE G. TANNER,
APPELLEE.

44 N. W. 2d 513

Filed November 3, 1950.    No. 32787.

*Hollman & McCarthy,* and *V. H. Halligan,* for appellant.

*Beatty, Clarke, Murphy & Morgan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an appeal from an order of the district court
for Lincoln County setting aside a verdict of the jury
in favor of the defendant and granting the plaintiff a
new trial.

The procedure to be followed in a case such as we have before us is controlled by our decision in Greenberg v. Fireman's Fund Insurance Co., 150 Neb. 695, 35 N. W. 2d 772, wherein we said: "If, as in the instant case, the trial court gave no reasons for its decision, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error and submits the record to critical examination with the contention that there was no prejudicial error. Under these circumstances the appellant is not required to establish a negative. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court. The appellant then in reply has the right, if he desires, of meeting those contentions." The parties have complied with the procedure therein announced. The plaintiff urges that the trial court properly awarded a new trial to the plaintiff because the trial court erred (1) in failing to instruct the jury that the defendant was guilty of negligence as a matter of law in running into the rear of the car in which plaintiff was riding, and (2) in giving instruction No. 11.

A review of the facts is necessary to a proper determination of the questions thus raised. The record discloses that on March 13, 1948, about 12:30 p. m., Leslie G. Tanner was driving a light truck, with a two-wheel house trailer attached, east on U. S. Highway No. 30 about four miles west of Sutherland, Nebraska. Under the belief that he had a low tire he pulled over to the south edge of the pavement and stopped with the right wheels on the very edge of the pavement. Behind Tanner's truck and trailer was an automobile driven by Naomi Spurgin, which was driven within 30 or 40 feet of the trailer immediately prior to the accident. Following the Spurgin car was one driven by Lawrence Keiserman. Leah Keiserman, plaintiff and wife of Lawrence Keiserman, was riding in the front seat of this

car. Following the Keiserman car came another car owned and driven by the defendant Edwin M. Lydon. Mary Ellen Lydon, defendant's sister, occupied the front seat with him, and Walter Carl, a neighbor, was riding in the rear seat.

The evidence of the plaintiff is that she was riding with her husband, Lawrence Keiserman, immediately before the accident. As the Keiserman car approached the scene of the accident it was following the Spurgin car at a safe and reasonable distance and at a safe rate of speed. As the Keiserman and Spurgin cars were thus proceeding, the Tanner truck and trailer stopped in the east-bound lane of traffic. An approaching automobile prevented the Keiserman and Spurgin cars from passing the Tanner vehicles. As the Spurgin car slowed down, plaintiff's evidence is that the Keiserman car was slowed down by the application of its brakes, which was indicated by the flashing of the brake lights on the rear of the car. It is the contention of plaintiff that the defendant was driving his automobile in an easterly direction behind the Keiserman car at a reckless and excessive rate of speed and ran into the rear of the Keiserman car, causing the injuries to plaintiff of which complaint is made. The evidence of plaintiff and her husband is to the effect that their car had been stopped or almost stopped three to ten feet behind the Spurgin car when they were struck from the rear by defendant's car. Both testify that the Keiserman car did not strike the Spurgin car before the former was struck by defendant's car.

Defendant was driving in an easterly direction and came up behind the Keiserman car. He states that he was driving 50 or 55 miles an hour just before the accident. When he saw the other cars slowing down ahead of him he turned to the left to pass, but seeing that the north lane was occupied he returned to the right lane. At that time he applied his brakes and threw his sister into the windshield. He thereupon released the brakes temporarily and then applied them again. In a few

seconds he bumped into the back of the Keiserman car. A tire mark was made on the pavement for a distance of 94 feet by defendant's car. Defendant testifies that the Keiserman car stopped or slowed down very suddenly. He did not know whether his car struck the Keiserman car before or after the Keiserman car struck the Spurgin car. The witness Carl, the occupant of the back seat of defendant's car, says that the Keiserman car struck the Spurgin car before defendant hit the Keiserman car.

The medical testimony shows that plaintiff suffered a compression fracture of the twelfth dorsal vertebra. There is evidence also of a small ossicle between the fifth and sixth cervical vertebrae. Plaintiff's medical experts testify that these injuries could be sustained by the force resulting only from the striking of the Keiserman car from the rear. The medical experts called by the defendant state that the injuries could have resulted from the striking of the Keiserman car by the defendant, the striking of the Spurgin car by the Keiserman car, or from being thrown against another part of the car wherever the force may have been applied.

It is the contention of the plaintiff under the facts here shown that defendant was guilty of such negligence in driving his car into that of Keiserman that the trial court should have instructed the jury to return a verdict for the plaintiff, leaving to the jury only the question of the amount of damages to be awarded. We cannot agree with the plaintiff. It is true that defendant saw the three cars ahead of him. He was obliged to see that which was in plain sight. The cars ahead of him were moving east as he came up behind them. There is some evidence that the Keiserman car stopped suddenly and unexpectedly. There is evidence, very conflicting, as to the sequence of two collisions between the Spurgin, Keiserman, and Lydon cars. There is a difference of opinion among the experts as to whether the first or second collision was the proximate cause of plaintiff's

injuries. The conflicting questions of fact necessary to a determination of the issues are for the jury and not the court.

The case appears to be quite similar to the case of O'Brien v. J. I. Case Co., 140 Neb. 847, 2 N. W. 2d 107, wherein we said: "The two automobiles, in the instant case, were proceeding along an almost level, dry highway, with good visibility, with nothing to interrupt their driving or make it difficult. The Waite car had been proceeding at 50 miles an hour; the O'Brien car at 40 to 45 miles. Obviously, as long as the cars retained their respective speeds, there would be no collision, but if the car ahead stopped suddenly or abruptly or slowed down instantly, without the driver thereof giving any signals, as required by law, the driver of the car following would be confronted with an emergency. We believe O'Brien acted as an ordinary, prudent person would act under like or similar circumstances. He immediately applied his brakes in an endeavor to stop his car and tried to turn to the left and avoid the Waite car. He could not turn to the right; the girls were in that vicinity.

"In consideration of the entire record, we conclude that the negligence of the defendant driver and the negligence of the driver of the car in which the plaintiff was riding presented a jury question under proper instructions."

We call attention to the fact that many more conflicts in the evidence exist in the case at bar than in the O'Brien case. There is evidence that defendant's sister was thrown into the windshield of his car when he first applied his brakes, an occurrence which had a distracting effect. There is evidence that the Keiserman car stopped suddenly and unexpectedly, causing an emergent situation. The evidence conflicts as to the sequence of the two collisions and as to which was the proximate cause of the injuries sustained by the plaintiff. The medical testimony is in conflict as to the manner in which the described injuries were or might have been sustained.

We think these conflicts in the evidence require that the case be submitted to the jury, and that it would have been error to instruct that the evidence showed conclusively the wrong was with the defendant. The failure or refusal of the trial court to so instruct does not support the action of the trial court in granting a new trial.

Plaintiff contends that instruction No. 11 given by the court was prejudicially erroneous. This was an instruction on the credibility of witnesses and the weight to be given to their testimony. It included this sentence: "Yet, you have no right to reject the testimony of any of the witnesses without good reason, and you should not do so until you find it irreconcilable with other testimony which you may find to be true." The plaintiff relies upon Wilson v. State, 150 Neb. 436, 34 N. W. 2d 880, and Schluter v. State, 151 Neb. 284, 37 N. W. 2d 396, to support his claim of prejudicial error.

It will be noted at the outset that the cases cited, as well as the others in this jurisdiction which support the rule therein announced, are criminal cases. There has never been a plain and definite statement in any of the pronouncements of this court that such an instruction is prejudicially erroneous whenever given in a criminal case. The nearest approaches to it will be found in Wilson v. State, *supra,* and Jennings v. State, 150 Neb. 828, 36 N. W. 2d 268. In Frank v. State, 150 Neb. 745, 35 N. W. 2d 816; Knihal v. State, 150 Neb. 771, 36 N. W. 2d 109, 9 A. L. R. 2d 891; Schluter v. State, *supra;* Kitts v. State, 151 Neb. 679, 39 N. W. 2d 283; and Latham v. State, 152 Neb. 113, 40 N. W. 2d 522, the giving of such an instruction is held to be erroneous and ordinarily prejudicial. In making these distinctions it is not the purpose of the court to determine in this case the rule to be applied in criminal cases. They are pointed out merely to show their inconclusiveness as authority for the plaintiff's position in the case at bar. We have held such an instruction to be erroneous when given in a civil case, but we have never held it to be prejudicially

erroneous in such a case. Krepcik v. Interstate Transit Lines, *ante* p. 98, 43 N. W. 2d 609. Whether its use constitutes reversible error is dependent upon the situation existing in each particular case. If the language under the facts shown is prejudicial to the rights of a party to a fair trial it is reversible error, but otherwise not.

In considering the application of the rule in civil cases we desire to point out that sound reason exists for a different application of the rule in such cases. In criminal cases the State is required to prove the guilt of the defendant beyond a reasonable doubt. The plea of not guilty by the defendant is evidence in his behalf and clothes him with a presumption of innocence until it is overcome by evidence beyond a reasonable doubt. In a criminal case the burden of proof is always upon the State. The defendant may submit his case to the jury on the theory that the State has not maintained the required burden of proof, or that the State has not affirmatively eliminated a reasonable doubt. The inherent nature of a criminal trial makes the instruction much more susceptible to a charge that it was prejudicial to the rights of the accused than to a party in a civil action. In civil cases the jury is required to determine the facts by a preponderance of the evidence. The parties to a civil suit are not clothed with a protective legal mantle as in a criminal case, nor is the burden of proof of a degree designed to protect from the political intemperances of the past, as in the latter. The jury is usually told, as in the case at bar, that "you are the sole judges of the credibility of witnesses. You are not bound to accept as true any statement simply because it is sworn to by the greater number of witnesses, nor are you bound to accept the testimony of any witness as absolutely true if for any good reason it appears unreliable or untrue." The evidence in the present case was very conflicting. To find for either party the jury from necessity must disbelieve the other. They could not believe both. Consequently, under the facts in this

case the jury did from necessity what the court erroneously instructed they should do. The result would have been identical if the erroneous instruction had not been given. The burden of proof was on the plaintiff and the instruction did not have the effect of changing that burden to her detriment. In this it is much different than in a criminal case when, under some circumstances, such an instruction can have the effect of placing a greater burden upon the accused than the law permits. The jury was not required to accept as true the evidence of witnesses which was uncontradicted and reconcilable, for the very good reason that the evidence was contradicted and irreconcilable. The instruction under such circumstances could not be prejudicial to plaintiff's right to a fair trial.

We do not think that the instruction as given had the effect upon the jury that the plaintiff contends. While the language used was inaccurate and ought to be corrected in the interest of exactness, we cannot say that it misled the jury. The break-down of the language used in order to arrive at its exact meaning requires such technical refinements of definition and expression that it can hardly be supposed that they were observed by the jury.

The identical language given in a similar instruction was before this court in Moore v. Pacific Mutual Life Ins. Co., 128 Neb. 605, 259 N. W. 916. We there said: "Instruction No. 8 was the conventional instruction given for a generation by judges all over the state. Appellant criticizes the last sentence only, which reads: 'Yet you have no right to reject the testimony of any of the witnesses without good reason, and should not do so until you find it irreconcilable with other testimony you may find to be true.'

"Appellant says that this part of the eighth instruction tells the jury they must accept testimony they have found under the sixth instruction to be false because there may be no other testimony on the particular matter

and therefore no testimony with which to compare it and decide it 'irreconcilable.' This is splitting hairs too fine for us to believe the parts could be seen by the jury. Besides, how could they decide that any witness had testified falsely except by comparison of his testimony with other facts testified to or by the implication of other testimony? In our opinion the error assigned is not tenable. The instruction complained of is, held free from prejudicial error."

That the instruction in question is a stock instruction which has been followed by trial courts in this state for a great many years cannot be denied. It was never questioned until the Moore case came to this court in 1935. Except in the Krepcik case, heard during the current year, it has not been questioned since in a civil case until the present appeal was taken to this court. During all these years trial judges have been giving this instruction without any objection on the part of a bar which carefully scrutinizes their actions in search of error. How can it be said that technical refinements in exactness of expression which have escaped the bench and bar for so many years could mislead a jury in a function so fundamental? For all practical purposes the jury was not misled by the instruction and the plaintiff was not therefore denied a fair trial. There certainly is nothing in the instruction which requires the jury to accept and believe false testimony, or that requires it to refuse and disregard evidence which it believes to be true. It would not lead a jury to believe that it was obliged to accept false testimony merely because they were unable to find it irreconcilable with true testimony. The common sense of the jury would not permit such an absurd meaning to be placed upon the language in question. The instruction is not prejudicially erroneous under the facts and circumstances of this case.

We find no error in the record which will sustain the action of the trial court in granting a new trial. This being so, the defendant is entitled to the benefit of his

verdict. The judgment of the district court is ·reversed with instructions to reinstate the verdict of the jury and to enter judgment thereon.

REVERSED AND REMANDED WITH DIRECTIONS.

MESSMORE, YEAGER, and BOSLAUGH, JJ., dissent.